61 P.3d 1111 (2003)
148 Wash.2d 490
CITY OF SUMNER, Respondent,
v.
Thomas Edward WALSH, Petitioner.
No. 71451-7.
Supreme Court of Washington, En Banc.
Argued March 14, 2002.
Decided January 23, 2003.
*1112 Jennifer Shaw, Aaron Caplan, Seattle, for Petitioner.
Patricia Bosmans, Asst. Sumner City Atty., Sumner, for Respondent.
Annette Monnett, Asst. Tacoma City Atty., Tacoma, amicus curiae on behalf of City of Tacoma.
ALEXANDER, C.J.
The City of Sumner Municipal Court determined that Thomas Walsh committed two infractions of Sumner's juvenile curfew ordinance by allowing his 14-year-old son, Justin, to be in a public place during curfew hours. Walsh was fined $50 for each infraction. He appealed the municipal court's decision to the Pierce County Superior Court where he asserted that Sumner's curfew ordinance was unconstitutional in that it was vague as well as violative of the constitutional right of minors to move freely in public places and of parents to rear their children. The superior court rejected these challenges and affirmed his convictions. We granted discretionary review of the superior court's decision and now conclude that Sumner's juvenile curfew ordinance is unconstitutionally vague.

I
Sumner's juvenile curfew ordinance makes it unlawful for juveniles to be in a public place after certain hours. SUMNER MUNICIPAL CODE (SMC) 9.28.020(A). The ordinance also makes it unlawful "for the parent ... of any juvenile to permit or knowingly allow such juvenile to remain in any public place... during curfew hours." SMC 9.28.030(A) (emphasis added). Juveniles may, however, be in public places during curfew hours if their presence falls under one of the exemptions set forth in the ordinance. These exemptions include going to or from work and to or from an adult-supervised or school-sponsored event.[1] SMC 9.28.040(C), (E), (G). Interstate travel is also exempt. SMC 9.28.040(H). Of particular significance to this case is the exemption for a juvenile who "is on an errand as directed by his or her parent." SMC 9.28.040(B). "Errand" is not, however, defined.

A. Factual Background
At 1:46 A.M. on July 25, 1999, Thomas Walsh's 14-year-old son, Justin, was observed at an "Am Pm Minimarket" in Sumner by Officer David Strader of the Sumner Police Department. Clerk's Papers (CP) at 34. Strader believed that Justin was a "habitual offender of the City of Sumner curfew ordinance" and, thus, contacted the youngster to see if he had a note from his parents authorizing him to be in a public place during curfew hours. Id. Justin failed to produce such a note and indicated to the officer that he was at the minimarket "just to hang out." CP at 34. Officer Strader then took Justin into custody.[2]
At the Sumner police station, another police officer, Jeff Engel, placed a telephone call to Justin's father. Thomas Walsh told Engel that Justin had his permission to be at the store. Although Strader testified that he did not believe that either Justin or Justin's father provided an excuse that fell within any of the exemptions set forth in the ordinance, he transported Justin back to the Am Pm *1113 Minimarket so that the youngster could pick up his bicycle and return home.
Approximately 45 minutes later, Strader observed Justin riding his bicycle toward the Am Pm Minimarket. A few minutes later, Strader confronted Justin at the minimarket as Justin was attempting to purchase a package of chewing gum. Following this encounter, Strader mailed a citation to Thomas Walsh charging Walsh with violating the curfew ordinance by allowing Justin to be in a public place during curfew hours.
Five days later, on July 30, 1999, Engel contacted Justin and another juvenile at approximately 2:00 A.M. on a public sidewalk in Sumner. According to Engel's report, Justin told him that he was "going to AM/PM to get some Advil for his father." CP at 8. Engel then took Justin to the Sumner police station and placed a telephone call to Thomas Walsh. Walsh again stated that Justin had his permission to be out of the family home so that he might go "on an errand to the store." CP at 36. When Thomas Walsh came to the police station to collect his son, Engel issued him another citation for violating the curfew ordinance.[3]

B. Procedural Background
At trial in Sumner Municipal Court, Thomas Walsh testified that on each occasion that led to him receiving a citation he had given Justin permission to go to the store. The record further established that Walsh had previously contacted the city attorney of Sumner to find out how he could allow his son to leave the family house with his permission during curfew hours without running afoul of Sumner's ordinance. Despite this testimony, the municipal court held that the city established by a preponderance of the evidence that Walsh violated the ordinance on July 25 and July 29 by knowingly permitting Justin to be in public during curfew hours. Thomas Walsh was fined $50 for each infraction.
Walsh appealed to Pierce County Superior Court where he challenged the constitutionality of Sumner's curfew ordinance. The superior court upheld both convictions but remanded the matter to Sumner Municipal Court at the city's request "for determination of factual precedent." CP at 181. On remand, the city presented testimony from its chief of police together with certain exhibits. Walsh then petitioned the Court of Appeals, Division Two, for discretionary review. That court transferred Walsh's petition to our court and we granted review.[4]

II
We must first consider Walsh's motion to strike two items, the testimony of the Sumner police chief at the remand hearing, and a memorandum from the police chief to Sumner's Public Safety Committee that the city filed with this court as an attachment to a pleading entitled "Record Necessary for Review." These items were not part of the record on review nor had they been the subject of a motion to supplement the record on review. Generally, we consider only those documents that have properly become part of the record on review. Snedigar v. Hoddersen. 114 Wash.2d 153, 164, 786 P.2d 781 (1990). RAP 9.5(c), RAP 9.9, and RAP 9.10, however, provide the means by which a party may supplement the record in the event the party believes the record is not adequate. Because the testimony of the chief of police and the memorandum to the Public Safety Committee that the city included in what it called "Record Necessary for Review" were not part of the record for review, and the city failed to supplement the record pursuant to the aforementioned court rules, we grant Walsh's motion to strike the documents.

*1114 III
We next consider the city's contention that because no party is arguing Justin's rights before the court and because the attorney general is not a party to the action, "[t]his Court is without jurisdiction to hear the matter." Am. Br. of Resp't at 35. In support of that contention, the city asserts that Walsh's challenge to the validity of the parental responsibility portion of the ordinance rests on his challenge to the ordinance as a whole. It posits, therefore, that "this Court should dismiss this matter for failure to join indispensable parties" because neither a juvenile nor the attorney general is a party to this action. Am. Br. of Resp't at 40.
We disagree with the city's contention that we lack jurisdiction to review the decision of the Pierce County Superior Court. As a general principle, a defendant has standing to assert a constitutional challenge to an element of a charged offense. See, e.g., State v. Goucher, 124 Wash.2d 778, 881 P.2d 210 (1994). Furthermore, our decision in City of Seattle v. Pullman, 82 Wash.2d 794, 514 P.2d 1059 (1973), makes it clear that Walsh has standing to assert his constitutional challenges to the curfew ordinance because the offense with which he is charged, allowing a juvenile to remain in a public place in Sumner during curfew hours, is premised upon his son's violation of the curfew. In Pullman, we stated:
The defendant has standing to challenge the constitutionality of [the ordinance because].... [o]ne of the necessary elements for conviction for accompanying a child during curfew hours ... is an actual violation by the minor of the curfew ordinance.... His conviction cannot stand without a determination that a valid curfew ordinance was violated.
Pullman, 82 Wash.2d at 796, 514 P.2d 1059 (emphasis added). The only difference between the Pullman case and the instant is that Walsh was charged with a civil infraction whereas Pullman was charged with a crime, a misdemeanor. The city has not presented us with any authority, nor can we find any, that suggests that this is a significant distinction.
Insofar as participation of the attorney general is concerned, the city cites RCW 7.24.110. It provides that "[i]n any proceeding which involves the validity of a municipal ordinance ... [that] is alleged to be unconstitutional the attorney general shall also be served with a copy of the proceeding and be entitled to be heard." RCW 7.24.110 (emphasis added). This statute only applies to proceedings brought under the Uniform Declaratory Judgments Act. See Standow v. City of Spokane, 88 Wash.2d 624, 633, 564 P.2d 1145 (1977), overruled on other grounds by State v. Smith, 93 Wash.2d 329, 610 P.2d 869 (1980). Walsh is not maintaining a proceeding under the Uniform Declaratory Judgments Act. Rather, he raised his challenge to the constitutionality of the curfew ordinance in an appeal, pursuant to the Rules for Appeal of Decisions of Courts of Limited Jurisdiction, in Pierce County Superior Court. We are simply reviewing the decision of the superior court affirming his convictions in municipal court for violating the ordinance. That being the case, RCW 7.24.110 has no application.

IV
We must next determine if, as Walsh claims, Sumner's curfew ordinance "is unconstitutional because it violates fundamental rights of juveniles and their parents, and is also void for vagueness."[5] Br. of Pet'r at 9. As noted above, Walsh is charged with violating the parental responsibility provision of the curfew ordinance. That provision, SMC 9.28.030(A), makes it "unlawful for the parent, guardian or other adult person having custody or control of any juvenile to permit or knowingly allow such juvenile to remain in any public place or on the premises of any establishment within the city of Sumner during *1115 curfew hours." (Emphasis added.) Underlying this parental responsibility is the provision in the ordinance making it "unlawful for any juvenile to remain in any public place or establishment within the city of Sumner during curfew hours." SMC 9.28.020(A) (emphasis added). "`Remain' means to linger or stay." SMC 9.28.010(H).
In support of his assertion that the ordinance is void for vagueness, Walsh quotes from our decision in Pullman and contends that the Sumner ordinance, which makes it unlawful for juveniles to "remain" (i.e., linger or stay) in a public place during curfew hours and for parents to permit their juvenile child to do so, is unconstitutionally "vague because these terms `do not provide ascertainable standards for locating the line between innocent and unlawful behavior.'" Br. of Pet'r at 27 (quoting Pullman, 82 Wash.2d at 799, 514 P.2d 1059).
Walsh correctly notes that this court concluded in Pullman that an ordinance of the City of Seattle which made it unlawful for juveniles to "loiter, idle, wander or play" during curfew hours violated the due process clause of the Washington and federal constitutions because those terms were not sufficiently precise. Pullman, 82 Wash.2d at 799, 514 P.2d 1059. He argues that the terms "`[r]emain, linger, or stay' are no more precise than [the terms] `loiter, idle, wander, or play,'" that we examined in Pullman. Br. of Pet'r at 27. Thus, he avers, the ordinance before us now presents the same constitutional deficiencies.
Walsh also relies on a decision of the Court of Appeals in State v. J.D., 86 Wash.App. 501, 937 P.2d 630 (1997), in support of his assertion that the parental responsibility portion of the ordinance fails to pass constitutional muster because it does not clearly define what constitutes an "errand." In J.D., the Court of Appeals concluded that because an exemption in the City of Bellingham's curfew ordinance for "`an activity including, but not limited to, dance, theater presentations, and sporting events'" did not provide police officers with "sufficient guidance to determine whether a minor" could avail him or herself of one of the ordinance's exemptions, the ordinance was unconstitutionally vague. J.D., 86 Wash.App. at 510, 937 P.2d 630 (quoting in part BELLINGHAM MUNICIPAL CODE 10.62.030(C)(6)).
The void-for-vagueness doctrine is rooted in principles of due process. Nunez v. City of San Diego, 114 F.3d 935, 940 (9th Cir.1997) (citing Finley v. Nat'l Endowment for the Arts, 100 F.3d 671, 675 (9th Cir. 1996)); State v. Glas, 147 Wash.2d 410, 421-22, 54 P.3d 147 (2002) (citing City of Seattle v. Webster, 115 Wash.2d 635, 642-43, 802 P.2d 1333 (1990); State v. Smith, 111 Wash.2d 1, 4-5, 759 P.2d 372 (1988)). "To avoid unconstitutional vagueness, an ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." Nunez, 114 F.3d at 940 (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).
Since the city has limited the meaning of the term "remain" in SMC 9.28.010(H) to "linger or stay," we must determine if the latter words are sufficiently precise so that ordinary people can understand what conduct is prohibited and police officers will knowhow to enforce the law in a nonarbitrary, nondiscriminatory manner. Webster's Third New International Dictionary defines "linger" as "to be slow in parting or in quitting something," or "to remain or wait long." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1316 (1993). The same dictionary defines "stay" as to "stop going forward," or "to stop doing something" or "to remain somewhere ... rather than proceed or leave." Id. at 2231. These terms are not, in our judgment, sufficiently precise so that a person of ordinary intelligence is accorded fair notice of what conduct is prohibited. Neither do these terms provide sufficient guidance to officers endeavoring to determine if a juvenile's conduct is exempt from the ordinance.
As noted, the Sumner ordinance makes it unlawful for a juvenile to "remain" in a public place unless the juvenile's actions fall within the listed exemptions. Consistent with that notion, a juvenile who is not engaged in exempted activity does not violate Sumner's *1116 ordinance if he or she does not "remain" (i.e., linger or stay) in a public place. Unfortunately, it cannot be easily determined from the terms employed by the city whether and when a juvenile is engaged in an activity which runs afoul of the ordinance. For example, one can reasonably ask whether the ordinance is violated by a juvenile who travels on foot during curfew hours, from any activity, and slows his or her pace, or stops, for perfectly legitimate reasons (tying one's shoelaces for example). One might ask the same question about a juvenile who stops to purchase gasoline while traveling to his or her home by automobile from an exempted activity such as a school football game or concert. Does such conduct constitute lingering or staying in violation of the ordinance? Sumner's ordinance simply does not provide sufficient guidance to answer these questions and many more and thereby prevents unconstitutionally arbitrary discretion by law enforcement. "An ordinance that allows a person to stand on a public sidewalk only at the whim of a police officer is unconstitutional." City of Seattle v. Drew, 70 Wash.2d 405, 411, 423 P.2d 522 (1967) (citing Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965)). In sum, an ordinance which affords a police officer broad discretion to determine if a juvenile is in violation when tying his or her shoe or pumping gas does not withstand a vagueness challenge.
Considering the discretion that police officers are accorded under the ordinance, one is left to wonder whether the practical effect of the ordinance is to simply make it unlawful for a juvenile to be present in a public place during curfew hours.[6] The problem with the ordinance, in short, is that it does not provide "ascertainable standards for locating the line between innocent and unlawful behavior" that this court requires. Pullman, 82 Wash.2d at 799, 514 P.2d 1059. Our conclusion in that regard is buttressed by the Ninth Circuit's decision in Nunez that phraseology in a curfew ordinance which allows police officers to enforce the ordinance by penalizing juveniles for a narrower range of conduct other than mere "presence" is unconstitutionally vague because it affords excessive discretion to the police. See Nunez, 114 F.3d at 943.
As noted above, Walsh also contends that the Sumner ordinance is constitutionally infirm because it fails to provide police officers with sufficient guidance to determine whether a juvenile's presence in a public place during curfew hours falls under the "errand" exemption. Pertinent to this case, we believe that the term "errand" is also vague in that it fails to provide sufficient notice of what conduct is prohibited or standards for police officers to enforce that conduct. We can easily conceive of a situation where a parent sends his or her juvenile child to a neighbor's house during curfew hours in order to deliver a package. Because the ordinance fails to define what constitutes an "errand," a police officer is furnished with little guidance as to whether the juvenile engaged in such an activity is in violation of the ordinance. In this regard, the instant case is similar to J.D. in which the court concluded that a juvenile curfew ordinance that exempted juveniles en route to or from "an activity" was unconstitutionally vague. See J.D., 86 Wash.App. 501, 937 P.2d 630. That court reasoned that "[b]ecause the ordinance is unclear about what is and is not an exempted activity, [the ordinance] fails to provide explicit standards for enforcement." J.D., 86 Wash.App. at 510, 937 P.2d 630.[7]
*1117 We recognize that it may be difficult for a city to draft a curfew ordinance that is not unconstitutionally vague. The primary reason for that, as we pointed out in Pullman, is that curfew ordinances attempt to make activities that are normally considered innocent, unlawful, i.e., walking, driving, going to the store. If a city chooses to establish a curfew that does not simply make it unlawful for a juvenile to be in a public place after curfew hours, with no exceptions, it must establish the line between conduct that does not fall under the ordinance and that which does in a way that the ordinance can be enforced in a nonarbitrary manner.[8] For reasons stated above, we believe that Sumner's council did not draw that line with sufficient precision. Accordingly, we hold that its ordinance that makes it unlawful for juveniles to "remain" in a public place during certain hours and prohibits parents from permitting their juvenile children to do the same is unconstitutionally vague and, therefore, void. Thus, we reverse Walsh's convictions for being in violation of the ordinance. Because we reach that conclusion it is unnecessary to reach Walsh's additional constitutional challenges to the ordinance.

V
In sum, we conclude that we have jurisdiction to hear this matter since neither a juvenile nor the attorney general is indispensable parties to this action. On the merits of this facial challenge to the Sumner ordinance, we conclude that the ordinance is unconstitutionally vague and, therefore, void. That being the case, we reverse Walsh's convictions.
OWENS, J., and SMITH, J.P.T., concur.
CHAMBERS, J. (concurring).
"[F]reedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningfulknowing, studying, arguing, exploring, conversing, observing and even thinking." Aptheker v. Secretary of State, 378 U.S. 500, 520, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964) (Douglas, J., concurring). Any limitation on this freedom must be narrowly tailored to serve a compelling government interest, and substantial innocent conduct must not be collaterally damaged. I concur with the majority that the word "errand" is vague and this ordinance is facially unconstitutional. However, since I find its overbreadth to be its most glaring constitutional flaw, I write separately.

FACTS
The city of Sumner enacted a juvenile curfew in 1996. This curfew essentially prohibits children under 18 (unless they have been emancipated) from remaining in broadly defined public places or establishments at night. Sumner Municipal Code (SMC) 9.28.010(A), (C), (G). Violation of the ordinance is a civil infraction. SMC 9.28.020(C). Parents are also prohibited on pain of civil infraction from allowing their children to violate the ordinance. SMC 9.28.030. Narrow exemptions exist for such things as interstate travel, commuting directly to or from a job, or school event, or emergencies. SMC 9.28.040. Despite its civil nature, the police are specifically authorized to take children suspected of violating the ordinance into custody. SMC 9.28.050.
Several nights in July 1999, 14-year-old Justin Walsh took late night journeys out of his home, perhaps with the prior permission of his father, Thomas Walsh. On July 25, 1999, a police officer encountered Justin in an Am Pm Minimarket at about 1:46 a.m. The officer took Justin to the police station and called his father. Thomas told the officer Justin had permission to go to the store, and, despite some skepticism, the officer returned *1118 Justin to the Am Pm. When the officer encountered Justin out later that same night, he cited him and Thomas for violation of the ordinance.
At about 2:00 a.m. on July 30, 1999, an officer found Justin out in apparent violation of the curfew. This time, Justin was taken to the police station and kept in a locked cell until his father came to collect him. Again, both Justin and his father were cited for violation of the ordinance. Thomas Walsh now argues that the ordinance is unconstitutional. I agree with the majority that we have jurisdiction to consider the constitutionality of this ordinance.

ANALYSIS[1]
There is a fundamental right to move freely in public places. Papachristou v. City of Jacksonville, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). This freedom is rooted both in the First Amendment's protection of association and expression and in the fundamental liberties protected by the Fifth Amendment. Waters v. Barry, 711 F.Supp. 1125, 1134 (D.D.C.1989).
Walsh argues that Sumner's curfew ordinance violates equal protection. In an equal protection analysis, the level of scrutiny dictates both the form of the analysis and the level of protection given. Nunez v. City of San Diego, 114 F.3d 935, 945 (9th Cir.1997). Ordinances that infringe upon fundamental rights are given strict scrutiny. Nunez, 114 F.3d at 946. While the dissent is correct that courts around the country have differed on the level of scrutiny appropriate to juvenile curfews, this jurisdiction has settled the issue. Strict scrutiny applies.[2]State v. J.D., 86 Wash.App. 501, 508, 937 P.2d 630 (1997); Nunez, 114 F.3d at 945; accord City of Seattle v. Pullman, 82 Wash.2d 794, 799-800, 514 P.2d 1059 (1973) (effectively applying strict scrutiny).[3] The mere fact that only children are involved does not undermine this threshold determination. "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." Planned Parenthood v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). The freedom to move and the freedom to be still are fundamental freedoms, enjoyed by adults and children. Pullman, 82 Wash.2d at 800, 514 P.2d 1059; J.D., 86 Wash.App. at 506, 937 P.2d 630.
"In order to survive strict scrutiny, the classification created by the juvenile curfew ordinance must be narrowly tailored to promote a compelling government interest." Nunez, 114 F.3d at 946 (citing Plyler v. Doe, 457 U.S. 202, 217, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). For this ordinance to be constitutional, it must be narrowly tailored to meet a compelling government interest. This is where the age and judgment of minors comes into play. Children's enjoyment of fundamental rights may be conditioned as appropriate for their age and judgment. Accord Nunez, 114 F.3d at 945 ("[M]inors' rights are not coextensive with the rights of adults because the state has a greater range of interests that justify the infringement of minors' rights."). This analysis may take into account the different needs and abilities of children because we recognize that many of our young citizens are undeveloped in their judgments and decision-making abilities. Cf. Bellotti v. Baird, 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). Yet 14-year-olds are held to the standard of an adult for their torts, and increasingly, children are held to the same standard as adults for *1119 crimes committed. Young citizens are also entitled to protections under the constitution. See, e.g., Nunez, 114 F.3d at 945. Accommodation of the rights, powers, and liberties in play is an ongoing process and no easy formula has yet revealed itself. Instead, it requires thoughtful analysis and careful consideration of the facts every time.
The government may legitimately argue that the burden on the constitutional liberties of children is narrowly tailored to meet a compelling purpose, given (1) the particular vulnerability of children, (2) their inability to make crucial decisions, and (3) the importance of the parental role in child rearing to justify the legislative action taken in addition to the usual constitutional considerations. Bellotti, 443 U.S. at 634, 99 S.Ct. 3035. Unfortunately, on the record before us, I am unable to justify the broad reach of Sumner's ordinance even in light of these factors.
While broad statements from legislative bodies that the legislation serves compelling state purpose without substantial overbreadth is not sufficient to meet the constitutional standards, the government need not have scientific or exact proof of the need for legislation. Ginsberg v. New York, 390 U.S. 629, 642-43, 88 S.Ct. 1274, 1282, 20 L.Ed.2d 195 (1968). Sumner has a compelling state interest in reducing crime and protecting children from becoming the victims of crime. The question before us is whether there is a record to support Sumner's assertion that it must infringe upon the rights of minors to meet these legitimate public safety goals.
The majority properly grants Walsh's motion to strike from the record the testimony and memorandum of the Sumner police chief. There is no other record before us to satisfy the element of proof. The dissent seems satisfied that state reports on the rise of juvenile crime, and national surveys on curfews, is sufficient evidence upon which a small community would be justified in imprisoning all children within their homes (with some appropriate but insufficient exceptions). I disagree with the dissent and would require some evidence that correlates directly with the specific problems of the specific community sought to be addressed by the ordinance.[4] In the record before us, there is no factual basis to find that Sumner has compelling interests that must be served by such an onerous burden on the rights of children and parents as a curfew.
Other courts have struck down similar curfew ordinances because there was insufficient nexus between the law's means and ends. I agree with the courts that have found the number of juveniles engaged in safe and innocent activity almost certainly outnumbers those engaged in criminal activity. Like them, I would hold that confining all children to their homes, or to a few designated places and activities, without evidence that such draconian restrictions were necessary, is not narrowly tailored to serve the needs of public safety or child protection. See, e.g., Nunez, 114 F.3d at 948; Waters, 711 F.Supp. at 1136. Similarly, the record in this case also fails to provide evidence of a sufficient nexus between the curfew and juvenile victimization or crime rates to withstand strict scrutiny.[5]
*1120 Our own precedents make this clear. In Pullman we found a Seattle curfew unconstitutional both because it was vague and because it criminalized harmless conduct, in excess of the city's police powers. All of the conduct prohibited by the Sumner curfew that was not already criminalized is likely harmless. Prior ordinances and statutes dealt with criminal conduct. The Sumner curfew ordinance criminalizes innocent conduct, even if done with the parents' permission. For example:
1. A juvenile attends an evening concert in Seattle, but it is past the curfew hour by the time the juvenile drives back home to Sumner. See SMC 9.28.020,.040(E), (H);
2. A juvenile goes to work or attends an evening event sponsored by a local school or college, but returns home during curfew hours by way of an indirect route to avoid freeway construction. See SMC 9.28.020,.040(G);
3. A juvenile goes to a slumber party at a friend's house, but leaves during curfew hours and walks home as directed by the juvenile's parents because the friend wants to use alcohol or drugs. See SMC 9.28.020.
This ordinance prohibits too much innocent conduct. It infringes on recognized constitutional liberties held by children. It is overbroad, and without more evidence that it is narrowly tailored to meet a compelling state purpose, it must be struck.

FREEDOM OF EXPRESSION
This curfew also infringes on children's right of free expression. Cf. J.D., 86 Wash. App. at 509, 937 P.2d 630. "The United States Supreme Court has long recognized that minors have the same fundamental right of expression as adults." J.D., 86 Wash.App. at 509, 937 P.2d 630 (citing Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)). This freedom of expression may be limited only if the limitations are narrowly tailored to serve a compelling purpose. Waters, 711 F.Supp. at 1135. A broad exception for First Amendment activities has saved some ordinances. See, e.g., Qutb v. Strauss, 11 F.3d 488 (5th Cir.1993). Clearly, Sumner modeled its ordinance, including exceptions and defenses, on the Dallas curfew ordinance, which survived a similar challenge. There is, however, one significant difference between the two. The Dallas ordinance provided an additional exemption for "exercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech, and the right of assembly." Qutb, 11 F.3d at 498 (quoting Dallas, Tex. Ordinance No. 21309).[6]
Petitioner has established that this ordinance reaches substantial expressive First Amendment conduct unrelated to any compelling city interest. Therefore, this ordinance is unconstitutionally overbroad and must be struck. I respectfully concur in judgment.
SANDERS, J., concurs.
MADSEN, J. (dissenting).
Without sufficient constitutional justification, the majority strikes down a legitimate law enforcement tool that many cities across the country have adopted to combat crimes committed by and against juveniles. Unlike the majority, I would hold that the City of Sumner's (City) juvenile curfew ordinance, with its numerous exemptions, provides clear guidance as to what conduct is prohibited and is narrowly tailored to meet the City's compelling interests. Because I would reject petitioner's constitutional challenges, I dissent.

I. FACTS
Mr. Thomas Walsh was found to have committed two infractions of the parental responsibility provision of the City's juvenile curfew ordinance and was fined for each infraction. The ordinance provides that it is unlawful for any unemancipated juvenile under the age of 18 years to remain in any public place or establishment within the City between 11:00 *1121 p.m. Sunday through Thursday until 5:00 a.m. of the next day, and between 12:01 a.m. and 5:00 a.m. of other days (plus holidays and nonschool days). Sumner Municipal Code (SMC) 9.28.010(A), (E), .020(A). A violation is an infraction subject to increasing fines for successive violations, $50 to $200. SMC 9.28.020(C). Under the parental responsibility provision, a parent violates the ordinance if he or she permits or knowingly allows the juvenile to remain in a public place or establishment within the City during curfew hours. SMC 9.28.030(A). Again, a violation is an infraction subjecting the parent to increasing fines, $100 to $500. SMC 9.28.030(C). For both the juvenile and the parent, it is a complete defense if the juvenile's actions fall within exemptions listed in SMC 9.28.040, which, at the time relevant to this case, provided:
The provisions of this chapter shall not apply to the following situations:
A. At any time, if the juvenile is accompanied by his or her parent, legal guardian or other responsible person who is over the age of 21 and approved by the juvenile's parent, guardian, custodian or other adult person having custody or control of the juvenile to accompany said juvenile.
B. If the juvenile is one an errand as directed by his or her parent, guardian, custodian or other adult person having custody or control of the juvenile.
C. If the juvenile is legally employed, for the period one-half hour before to one-half hour after work, while going directly between his or her home and place of employment. This exception shall also apply if the juvenile is in a public place during curfew hours in the course of his or her employment.
D. The juvenile is within one block of his or her residence.
E. If the juvenile is coming directly home from an adult organized/supervised activity or place of public entertainment, such as a movie, play or sporting event. This exception will apply for one-half hour after the completion of such event.
F. If the juvenile is on an emergency errand directed or permitted by his or her parent, guardian, custodian or other adult person having custody or control of the juvenile.
G. If the juvenile is traveling by direct routes to or from an event sponsored by an accredited educational institution.
H. If the juvenile is in a motor vehicle and engaged in interstate travel with the consent of a parent, guardian, custodial or other adult person having custody or control of the juvenile through the state of Washington.[[1]]
In this case, Mr. Walsh maintained his son was on an errand within the meaning of SMC 9.28.040(B). The trial court rejected this defense, instead finding that the evidence showed violations of the ordinance. (The factual circumstances underlying each infraction are described below.)
Mr. Walsh raises several constitutional challenges in his petition for discretionary review. The majority addresses only one: that the ordinance is unconstitutionally vague.

II. ANALYSIS

A. Vagueness
SMC 9.28.030(A) provides that it is "unlawful for the parent, guardian or other adult person having custody or control of any juvenile to permit or knowingly allow such juvenile to remain in any public place or on the premises of any establishment within the city of Sumner during curfew hours." (Emphasis added.) This parental responsibility provision hinges on SMC 9.28.020(A), which makes it "unlawful for any juvenile to remain in any public place or establishment within the city of Sumner during curfew hours ." (Emphasis added.) "Remain" is defined as "to linger or stay." SMC 9.28.010(H). Mr. Walsh contends the term "remain" is unconstitutionally vague.
*1122 The due process clause of the fourteenth amendment to the United States Constitution requires that a state law provide citizens fair warning of what conduct is proscribed. City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990).
[A]n ordinance is unconstitutionally vague if a challenger demonstrates, beyond a reasonable doubt, either (1) that the ordinance does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) that the ordinance does not provide ascertainable standards of guilt to protect against arbitrary enforcement.
Douglass, 115 Wash.2d at 178, 795 P.2d 693 (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). "[A]ny `ordinance is unconstitutional when it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application.'" Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 114, 11 P.3d 726 (2000) (quoting Burien Bark Supply v. King County, 106 Wash.2d 868, 871, 725 P.2d 994 (1986)). "`[V]agueness in the constitutional sense is not mere uncertainty[;]' [rather, v]agueness in the constitutional sense means that persons of ordinary intelligence are obliged to guess as to what conduct the ordinance proscribes." Douglass, 115 Wash.2d at 179, 795 P.2d 693 (citation and footnote omitted) (quoting State v. Smith, 111 Wash.2d 1, 10, 759 P.2d 372 (1988)). "The void for vagueness doctrine
"is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."
Douglass, 115 Wash.2d at 179, 795 P.2d 693 (quoting Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)); see Schleifer v. City of Charlottesville, 159 F.3d 843, 853 (4th Cir.1998) (same).
Where the challenge is that an ordinance is facially invalid on vagueness grounds, the court must determine whether the ordinance implicates constitutionally protected conduct. If it does not, a court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). If the challenger's conduct is clearly proscribed, however, the challenger cannot complain that the enactment is vague as applied to the conduct of others. Id. at 495, 102 S.Ct. 1186; Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 740, 818 P.2d 1062 (1991). Accordingly, such challenges are examined in light of the facts of the case. Vill. of Hoffman Estates, 455 U.S. at 495 n. 7, 102 S.Ct. 1186; see Douglass, 115 Wash.2d at 181-82, 182 n. 8, 795 P.2d 693.
However, a successful facial challenge may be brought where an ordinance is not vague in all of its applications if it "reaches `a substantial amount of constitutionally protected conduct.'" Kolender, 461 U.S. at 358 n. 8, 103 S.Ct. 1855 (quoting Vill. of Hoffman Estates, 455 U.S. at 494, 102 S.Ct. 1186); Nunez v. City of San Diego, 114 F.3d 935, 940 (9th Cir.1997). There are several reasons why a different analysis is appropriate where the challenged laws regulate fundamental constitutional rights such as the freedoms of speech, assembly or association: First, to the extent a law is vague and relates to fundamental constitutional rights, it might have a chilling effect on important constitutional activities; second, the discretion to selectively enforce a vague law is most dangerous when the law regulates a fundamental right such as speech or travel; and third, the First Amendment needs "breathing space" and accordingly acceptable government regulation must be drawn with "narrow specificity." 4 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 20.9 (3d ed.2002) (quoting NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)).
In this case, aside from his vagueness challenge, Mr. Walsh's constitutional challenges are that the ordinance violates both a juvenile's fundamental right to move about in public places and a parent's fundamental right to rear children as the parent sees fit.
*1123 As explained below, some courts have agreed, or assumed for purposes of analysis, that juvenile curfew laws implicate a fundamental constitutional right to move about, a conclusion I will assume is correct for the purpose of analyzing this case. With this assumption, it follows that a facial vagueness challenge is appropriate. See, e.g., Nunez, 114 F.3d at 940.
The majority quotes some dictionary definitions of the words used in the ordinance to define "remain," i.e., "to linger or stay," SMC 9.28.010(H). Majority at 1124.[2] It then concludes that the term "remain" does not provide sufficient guidance as to the prohibited conduct or to prevent arbitrary enforcement, hypothesizing whether a juvenile could, during curfew hours, lawfully stop to tie a shoe or purchase gas.
Unfortunately, the majority's analysis is too constricted. This court has often noted that "[s]ome measure of vagueness is inherent in the use of language." Haley, 117 Wash.2d at 740, 818 P.2d 1062. "[T]he Constitution does not require `unattainable feats of statutory clarity.'" Hutchins v. District of Columbia, 188 F.3d 531, 546 (D.C.Cir. 1999) (quoting United States v. Maude, 481 F.2d 1062, 1068 (D.C.Cir.1973)). "[I]mpossible standards of specificity" are not required. Douglass, 115 Wash.2d at 179, 795 P.2d 693. "Condemned to the use of words, we can never expect mathematical certainty from our language." Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Finally, words in an ordinance should not be "examined in a vacuum." See Douglass, 115 Wash.2d at 180, 795 P.2d 693. Instead, the context of the entire enactment must be considered in assessing a void for vagueness challenge. Id. (citing City of Seattle v. Huff, 111 Wash.2d 923, 929, 767 P.2d 572 (1989)).
Initially, the word "remain" as defined appears clear enough, even without regard to the rest of the ordinance. "Stay" has the common meaning of "to remain somewhere... rather than proceed or leave...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2231 (1993). This conveys the idea that the meaning of "remain" is, as opposed to proceeding or leaving, rendering "remain" a readily understood term. "Linger" means, among other things, "to remain or wait long" with "delay" given as a synonym. Id. at 1316. Again, the common understanding is that a person stays as opposed to proceeding or leaving.
The word "remain" in the ordinance is thus akin to "presence," and when so defined courts have found "remain" sufficiently definite to withstand a vagueness challenge. See Nunez v. City of San Diego, 114 F.3d 935, 943 (9th Cir.1997) (noting that vagueness may be avoided where "remain" is defined to mean presence); Ramos ex rel. Ramos v. Town of Vernon, 48 F.Supp.2d 176, 181-82 (D.Conn.1999); Bykofsky v. Borough of Middletown, 401 F.Supp. 1242, 1252 (M.D.Pa. 1975); aff'd on other grounds, 535 F.2d 1245 (3d Cir.1976).
Although "remain" is sufficiently clear as defined, there is no doubt as to its meaning when it is examined in the context of the entire ordinance. There are numerous specific exemptions that describe when, despite the general prohibition, a juvenile may nevertheless "remain" in a public place or at an establishment. The court in Ramos cogently explained the following with regard to use of the word "remain" (along with "idle, wander, stroll or play") in a juvenile curfew ordinance:
[W]hat was intended and is clearly prohibited by the curfew ordinance is the presence of minors on the streets or in a public place unless they satisfy one of the ordinance's numerous exceptions. No reasonable person can seriously claim that they do not understand that such activity is what the ordinance generally proscribes. Minors undoubtedly have fair warning in regard to what the ordinance prohibits. Further, the simple determination of whether a minor is present on the streets or in a public place after the start of *1124 curfew is not one that vests excessive discretion in police officers.
Ramos, 48 F.Supp.2d at 181-82.
The majority asks, however, what about a juvenile stopping to tie a shoe or purchase gasoline following exempted activity. I do not believe the question is as difficult as the majority proposes. The ordinance plainly allows participation in a number of curfew-period activities and events under specified circumstances. It is clear that the juvenile will have to travel home from such activities and events. A person of ordinary intelligence who reads the exemptions along with the requirement that one not "remain" in a public place or any establishment would have no trouble concluding that one who stops briefly to tie a shoe on the way to run an errand or who purchases gasoline on the way home from an educationally sponsored event is not staying or lingering, as opposed to proceeding or leaving.
Of course, a juvenile who stops to purchase gasoline at an all night convenience store might remain and so violate the curfew ordinance. I do not believe that the discretion required of law enforcement officers under the ordinance is the unfettered discretion that is proscribed. As the Fourth Circuit reasoned when upholding a juvenile curfew ordinance quite similar to the one at issue here, "[e]very criminal law, of course, reposes some discretion in those who must enforce it. The mere possibility that such discretion might be abused hardly entitles courts to strike a law down." Schleifer, 159 F.3d at 854. Law enforcement officers must always make a decision as to whether conduct violates a lawthere is always some measure of discretion required.
Unfortunately, the majority requires impossible standards of specificitya standard that few, if any, statutes or ordinances could meet.
The term "errand" is also sufficiently clear. The common definition of the term is "a trip made in order to deliver a message or to purchase or attend to something...." WEBSTER'S, supra, at 772. SMC 9.28.040(B) provides that "[i]f the juvenile is on an errand as directed by his or her parent, guardian, custodian or other adult person having custody or control of the juvenile," the conduct is exempt. I cannot imagine how the word "errand" is vague in this exemption, given its common meaning.
In this regard, the majority accepts Mr. Walsh's contention that the term "errand" is unconstitutionally vague because it vests too much discretion in law enforcement officers. However, a close reading of Mr. Walsh's argument shows that his complaint is not so much that the term "errand" is vague as that the police did not believe the errand exemption applied. He says that the way the ordinance is drafted, the police may take any child into custody during curfew hours, contact the parent for an explanation, and, if not satisfied with the answer, cite the parent for a violation. Br. of Pet'r at 28-29.
This is not an issue of the way in which the ordinance is drafted, however. Nor does it concern the extent of discretion the word "errand" affords the police to take children into custody who violate the curfew ordinance. It is instead an issue of whether the police believed the explanation that Mr. Walsh gave. Redrafting the ordinance will not reach this complaint. As noted, police officers must always make decisions about whether conduct is unlawful.
Finally, the record does not bear out Mr. Walsh's claims in any event. The police reports were submitted at the hearing on the two infractions and read into the record. As to the first infraction, the report states that the officer observed Mr. Walsh's son Justin at a minimarket at 1:46 in the morning, took him into custody, and transported him to the police station. Mr. Walsh was called, and when asked why his son was out "said he went to the store and so let him go." Clerk's Papers (CP) at 34; see CP at 10. The officer who took Justin into custody asked him why he was at the minimarket, and Justin said "just to hang out" (CP at 10, 34); later "he said he was there to get something to eat." CP at 10, 34; see CP at 6. The officer then took Justin back to the minimarket to get his bicycle, but at about 2:30 in the morning the same day the same officer again saw Justin on the way to and entering the minimarket. He contacted Justin in the store, where Justin *1125 held up a package of gum and said he came in to get the gum. Mr. Walsh testified that he had given his son permission to run an errand to the store. The judge found that by a preponderance of the evidence the errand exception to the ordinance was not complied with, and that Mr. Walsh committed the infraction.
As to the second infraction, according to the police report an officer observed Justin and another youth a few days later after curfew in front of a bar, and asked Justin why he was out past curfew. Justin pulled out a note (which the officer said he did not need) and said that he was going to the minimarket for Advil for his father. The officer asked why the two youths were standing on the sidewalk with their hands in their pocket if they were supposed to be en route to the minimarket, and Justin said they were waiting to cross the street. The officer pointed out there was no crosswalk where they were, and added that Main Street would have been the quickest route to the minimarket. The officer called Mr. Walsh, who, when asked why Justin was out past curfew, "stated he didn't know why he was out and then stated Justin was going to the store. [The officer] asked him what store Justin was going to and for what reason. Walsh stated it wasn't any of [the officer's] business, told [him] to do what [he] ha[d] to do with Justin and hung up the phone." CP at 41; see CP at 8. Mr. Walsh testified that he told the officer that Justin "had permission, that he was to go to the store and return home." CP at 42. The judge found the City established that Mr. Walsh committed the infraction by a preponderance of the evidence.
Merely because Mr. Walsh said that he had given Justin permission to run an errand does not give rise to an absolute defense. There was clearly a factual question for the trier of fact to resolve in each instance, after considering all the evidence and assessing the demeanor and credibility of the witnesses who gave oral testimony. For example, as to the first infraction, Mr. Walsh's statement that he gave permission for Justin to run an errand was not consistent with the police report stating that Justin said he went to the store to "hang out" and to eat. As to the second infraction, the officer's report indicates that Justin was not telling the truth about being on an errand for his father, given his location and responses to the officer's questions. Mr. Walsh's refusal to describe the errand to the officer is also relevant evidence for the trier of fact.
Thus, even as a factual matter, this record does not show that the police "freely rejected" a parent's claim that the child was on a permitted errand. The ordinance provides that "[a] police officer who reasonably believes that a juvenile is violating any of the provisions of this chapter shall have the authority to take the juvenile into custody." SMC 9.28.050. Under the circumstances described in the police reports, there was a basis in each instance for the officers to reasonably believe that Justin was in violation of the curfew ordinance.
I would hold that neither the word "remain" nor the word "errand" used in the juvenile curfew ordinance is unconstitutionally vague.

B. Right to Move About in Public Places
Because I would reject Mr. Walsh's vagueness challenge, I turn to his remaining constitutional claims, which are also unavailing.
The exact nature of Mr. Walsh's challenge involving freedom of movement is unclear. Arguably he contends that the juvenile curfew ordinance violates equal protection, given his reliance on Nunez, 114 F.3d 935, and intermittent discussion of classifications. Br. of Pet'r at 16-20. He also relies on authority that does not address equal protection, but instead analyzes the curfew ordinance at issue under a strict scrutiny analysis on the ground that the ordinance impinges a fundamental right to freedom of movement rooted in the first and fifth amendments to the United States Constitution, State v. J.D., 86 Wash.App. 501, 937 P.2d 630 (1997). Br. of Appellant at 14, 16-19. Walsh cites a case treating "freedom to loiter for innocent purposes" as part of the liberty protected by the due process clause of the Fourteenth Amendment. Br. of Pet'r at 15 (citing and quoting City of Chicago v. Morales, 527 U.S. 41, 53-54, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) *1126 (plurality)). Finally, he refers to City of Seattle v. Pullman, 82 Wash.2d 794, 514 P.2d 1059 (1973), which he describes as employing an analysis examining the limits of the State's police power authority. Br. of Pet'r at 16.
I proceed on the basis of an equal protection challenge because the ordinance differentiates between classes of individuals based upon age. See Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir.1993) (treating claim as equal protection claim in light of classification drawn by juvenile curfew ordinance). Under an equal protection analysis, the first question is what classification or right is involved because the standard of review depends on the answer. Age is not a suspect classification demanding strict scrutiny. Gregory v. Ashcroft, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); Qutb, 11 F.3d at 492. However, the equal protection claim is that juveniles have a fundamental right to move about in public places and the ordinance unconstitutionally infringes this right while not similarly restricting adults. See Br. of Appellant at 16-20.
Courts have not agreed on whether juveniles have a fundamental right to move about freely in public places, or, if they have a right to freedom of movement, whether strict scrutiny applies. Compare, e.g., Hutchins, 188 F.3d at 536-39 (no fundamental right found; even if fundamental right implicated, intermediate scrutiny applies) (plurality), Schleifer, 159 F.3d at 846-47 (finding children possess "qualified rights" and applying intermediate scrutiny), and Bykofsky, 401 F.Supp. at 1256 (no fundamental right found), with, e.g., Nunez, 114 F.3d at 944-46 (finding juveniles have a fundamental right to freedom of movement and applying strict scrutiny), and Qutb, 11 F.3d at 492 (assuming, without deciding, that juveniles have a fundamental right to freedom of movement and applying strict scrutiny).
Hutchins notwithstanding, generally if a classification impinges on a fundamental right, strict scrutiny applies. Plyler v. Doe, 457 U.S. 202, 216-17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); Qutb, 11 F.3d at 492. Here, assuming that juveniles have a fundamental right to move about freely in public places and that therefore strict scrutiny applies, I would conclude that the juvenile curfew ordinance passes constitutional muster.[3]
Under the strict scrutiny standard of review, a classification created by the ordinance must promote a compelling governmental interest and the ordinance must be narrowly tailored to achieve that interest. Plyler, 457 U.S. at 216-17, 102 S.Ct. 2382; Qutb, 11 F.3d at 492; see Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs., 133 Wash.2d 894, 930, 949 P.2d 1291 (1997) ("[i]n order to withstand constitutional scrutiny, any action infringing on a fundamental right must be narrowly tailored to serve a compelling state interest").
The purposes of the City's juvenile curfew ordinance are to "preserve the public safety and reduce acts of violence by and against juveniles that are occurring at rates beyond the capacity of the police to assure public safety." CP at 77. The preamble to the ordinance also states that the Sumner City Council "finds that reasonable regulations on the hours which minors under the age of 18 may be in or upon public streets, parks or other public places will protect the minors of this municipality, and reinforce parental responsibility and authority." CP at 77.
These are compelling governmental interests. See Nunez, 114 F.3d at 946-47; Qutb, 11 F.3d at 492 (parties conceded, and the court agreed, that governmental interest in enacting a juvenile curfew ordinance to reduce juvenile crime and victimization, while promoting juvenile safety and well-being, is a compelling interest); J.D., 86 Wash.App. at 508, 937 P.2d 630 ("crime prevention and *1127 protecting minors from becoming victims are sufficiently compelling interests to survive strict scrutiny."). There is no doubt that a city has a compelling interest in protecting an entire community from crime. Nunez, 114 F.3d at 946 (citing Schall v. Martin, 467 U.S. 253, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)). "[T]his interest persists undiluted in the juvenile context." Id. at 264, 104 S.Ct. 2403. "The harm suffered by the victim of a crime is not dependent upon the age of the perpetrator." Id. at 264-65, 104 S.Ct. 2403. Also, a city's "strong interest in fostering the welfare of children and protecting the youngest members of society from harm is well-established." Schleifer, 159 F.3d at 848. "Courts have recognized `the peculiar vulnerability of children,' Bellotti [v. Baird], 443 U.S. [622,] 634, 99 S.Ct. 3035[, 61 L.Ed.2d 797 (1979) ], and the Supreme Court long ago observed that `streets afford dangers for [children] not affecting adults.' Prince [v. Massachusetts ], 321 U.S. [158,] 169, 64 S.Ct. 438[, 88 L.Ed. 645 (1944).]" Schleifer, 159 F.3d at 848.
Mr. Walsh appears to concede that the prevention of crime and protection of minors are compelling governmental interests, Brief of Petitioner at 17, but he maintains that the ordinance is not narrowly tailored to address those interests. I disagree. Sumner City Council meeting minutes dated May 6, 1996, summarize a public hearing on the ordinance. The City's police chief commented that an increase in juvenile crime had prompted the state legislature to pass laws enabling local jurisdictions to pass juvenile curfew laws.[4] CP at 52. In Sumner, since 1994 there had been a rise in crimes involving vandalism and theft of personal property from parked cars of from 10 percent to 36 percent. Id.; see CP at 49. A report before the council noted that as of May 1, 1996, the number of vehicle prowls (thefts from vehicles) had already exceeded the 1994 rate by 30 percent. CP at 49. The report stated that the impact of juvenile curfew laws enacted by other jurisdictions varied widely. CP at 63.[5] It noted that about half of 27 Washington municipalities "reported that their curfew ordinances had an impact on juvenile crime and a reduction in the number of youth congregating, two reported reductions in incidents of malicious mischief, disorderly conduct, auto prowls, and vandalism," although most had not conducted formal evaluations. CP at 63. The report also included national survey information about the effectiveness of curfews. Three hundred eighty-seven United States cities were surveyed.
"Thirty-six percent of the survey[ed] cities said their curfew was very effective and another 20 percent said it was somewhat effective, but 14 percent said it was not effective at all. These differences of opinion appear to relate to the way the curfew is enforces [sic]: Officials believe that where there is less parental involvement, there is less curfew effectiveness." *1128 CP at 63 (quoting a 1995 National Conference of Mayors survey).
There need not be scientific or exact proof of the need for legislation. J.D., 86 Wash. App. at 508, 937 P.2d 630 (citing Ginsberg v. New York, 390 U.S. 629, 642, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)). The city council had before it evidence of an increase in crime locally, the state legislative finding of an increase in juvenile offenses, and surveys that indicated that in many state municipalities and cities, nationally, curfews were effective. Given such evidence, the local legislative body could conclude that restricting the presence of juveniles on the streets at night would make for a safer community. Notably, in Nunez the court characterized the statistical evidence before it as providing "some, but not overwhelming, support for the proposition that a curfew will help reduce crime." Nunez, 114 F.3d at 948. The court also said that the city there had made little showing that a nocturnal curfew was a particularly effective means of achieving a reduction in such crime. Id. Applying a strict scrutiny standard, the court nevertheless concluded that the city had established the required nexus between the curfew and its compelling interest of reducing juvenile crime and victimization. Id. The court said, "[t]his is particularly true because of our conclusion that minors have a special vulnerability to the dangers of the streets at night. We will not dismiss the City's legislative conclusion that the curfew will have a salutary effect on juvenile crime and victimization." Id. Similarly, in Qutb, 11 F.3d at 493 n. 7, where strict scrutiny was also applied, plaintiffs contended that the City of Dallas had not statistically proved a nocturnal juvenile crime problem and thus had failed to meet its burden of proving the necessary fit between the compelling state interest and the curfew. The Fifth Circuit responded: "We will not... insist upon detailed studies of the precise severity, nature, and characteristics of the juvenile crime problem in analyzing whether the ordinance meets constitutional muster when it is conceded that the juvenile crime problem in Dallas constitutes a compelling state interest." Id.
Nor is it necessary for the City to establish that its ordinance completely solves the problems it was enacted to address. "[L]ocal legislative bodies are entitled to draw their conclusions in light of experience with a curfew's operation, and not have their efforts at reducing juvenile violence shut down by a court before they even have a chance to make a difference." Schleifer, 159 F.3d at 850-51. A legislative body is not constitutionally required to make the choice to solve the entirety of a social problem or no part at all. Plyler, 457 U.S. at 216, 102 S.Ct. 2382.
Finally, the ordinance in this case employs the least restrictive method of attaining its goals. The chief defect in the San Diego curfew ordinance declared unconstitutional in Nunez was the fact that its exceptions were not sufficiently detailed and comprehensive to make it the least restrictive means of serving the governmental interests. That ordinance contained only four exceptions: (1) when a minor was accompanied by an adult or other qualified adult; (2) when the minor was on an emergency errand for a parent; (3) when a minor was returning from a school-sponsored activity; and (4) when a minor was engaged in employment. See Nunez, 114 F.3d at 938-39 (quoting ordinance). Sumner's ordinance is patterned after the Dallas, Texas, juvenile curfew ordinance found constitutional by the Fifth Circuit in the face of a number of constitutional challenges in Qutb, 11 F.3d 488. The court in Qutb found the Dallas ordinance employed the least restrictive means of accomplishing its goals given the numerous, detailed exceptions in the ordinance. Indeed, the court said that "the defenses are the most important consideration in determining whether this ordinance is narrowly tailored." Qutb, 11 F.3d at 493-94. The Sumner ordinance is narrowly drawn to meet its stated purposes, while respecting the rights of minors. A juvenile may move about freely at night accompanied by a parent or qualified adult. The juvenile may be on an errand for a parent or guardian or other custodian, may work and return home after work, and may go to and return from an adult organized or supervised activity or a place of public entertainment such as a movie, play or sporting event. The juvenile may go on an emergency errand, travel home directly from an event *1129 sponsored by an accredited educational institution, may be within one block of his or her home, and may travel interstate.
As the court in Qutb observed with respect to the ordinance before it, it is true that some late-night activities of juveniles are curtailed under this ordinance; there would be no point in enacting it if there were not. "But when balanced with the compelling interest sought to be addressedprotecting juveniles and preventing juvenile crimethe impositions are minor." Qutb, 11 F.3d at 495.
Assuming that juveniles have a right to move about freely in public places and that strict scrutiny review accordingly applies, I would hold that the City's juvenile curfew ordinance withstands this level of review.

C. Right to Rear Children
Mr. Walsh also contends that the juvenile curfew ordinance unconstitutionally infringes on his right as a parent to rear his son. A parent's interest in the care, custody and control of his or her child is a fundamental liberty interest under the Fourteenth Amendment's due process clause. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Parental rights are not absolute, however, and may be subject to reasonable regulation. Nunez, 114 F.3d at 952 (citing Runyon v. McCrary, 427 U.S. 160, 178, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)). As the Fourth Circuit court observed in Schleifer, 159 F.3d at 852,
[n]ot every state restriction of a child's freedom derivatively abridges the fundamental rights of parents. The Supreme Court has rejected the view that parents possess an unqualified right to raise children that trumps any government regulation of their children's conduct. In Prince, the Court recognized "that the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare." [Prince,] 321 U.S. at 167, 64 S.Ct. 438[.]
The court in Schleifer rejected the argument that the juvenile curfew ordinance at issue there (also mirroring the Dallas ordinance upheld in Qutb) unconstitutionally interfered with the fundamental right to rear one's child. The court reasoned that the "ordinance, prohibiting young children from remaining unaccompanied on the streets late at night, simply does not implicate the kinds of intimate family decisions considered" in cases finding a constitutional violation, i.e., decisions about religious upbringing and education, and teaching a foreign language to a child. Schleifer, 159 F.3d at 852-53. As the court in Qutb reasoned, "the only aspect of parenting that this ordinance bears upon is the parents' right to allow the minor to remain in public places, unaccompanied by a parent or guardian or other authorized person, during the hours restricted by the curfew ordinance." Qutb, 11 F.3d at 495-96. The court characterized this as a minimal intrusion into a parent's rights, and noted that because of the broad exemptions included in the ordinance, the parent retained considerable decision-making rights relating to the child being in public during curfew hours. Id. at 495.
I agree with these courts that a juvenile curfew ordinance such as that at hand does not unconstitutionally interfere with a parent's right to rear his or her child, given the compelling state interests involved and the narrow tailoring of the ordinance.[6]

III. CONCLUSION
The majority employs such a restricted analysis that few, if any, enactments would survive a vagueness challenge. I would conclude that neither the term "remain" nor the term "errand" is unconstitutionally vague. Because I disagree with the majority's conclusion on the vagueness challenges, I would reach the remaining constitutional challenges. I would hold that the ordinance does *1130 not violate any right of a juvenile to move about in public places, assuming the existence of this right, or a parent's right to rear his or her child. Accordingly, I would affirm the superior court and affirm the municipal court's findings that Mr. Walsh committed two infractions by violating the parental responsibility provisions of the juvenile curfew ordinance.
For the reasons stated, I dissent from the majority opinion.
JOHNSON, IRELAND and BRIDGE, JJ., concur.
NOTES
[1] A juvenile is exempt from the ordinance for one-half hour while traveling to or from work or an adult-supervised activity. SMC 9.28.040(C), (E). The ordinance does not provide a similar period of exemption for juveniles traveling to or from school-sponsored events. In such a case, the juvenile is exempt from the ordinance only when the he or she is on a "direct route[ ]" to or from the event. SMC 9.28.040(G).
[2] Although a violation of the curfew ordinance is not a crime but, rather, a civil infraction, SMC 9.28.050 provides that "[a] police officer who reasonably believes that a juvenile is violating [the curfew ordinance] shall have the authority to take the juvenile into custody."
[3] Justin was also twice cited in Sumner Municipal Court for being in violation of the curfew ordinance. The municipal court dismissed the charges against Justin on the basis that it did not have subject matter jurisdiction because Justin was a juvenile.
[4] The petition was transferred to this court because "appellate jurisdiction of the court of appeals does not extend to civil actions ... when the original amount in controversy ... does not exceed the sum of two hundred dollars." RCW 2.06.030; see also City of Bremerton v. Spears, 134 Wash.2d 141, 949 P.2d 347 (1998).
[5] Walsh's assertion that the ordinance is unconstitutional in that it is vague as well as violative of the constitutional right of minors to move freely in public places and of parents to rear their children appears to be based on the United States Constitution and not the state constitution. In the absence of briefing pursuant to State v. Gunwall, 106 Wash.2d 54, 62, 720 P.2d 808 (1986), we assume that the state constitution provides no more support for Walsh's position than does the federal constitution.
[6] It is apparent that the dissent equates "remain" with "presence" in order to avoid a vagueness determination. See generally Nunez, 114 F.3d at 943. This interpretation is not precise. "Presence" is a broader term than "remain." ("Presence" is defined as "the fact or condition of being present" or "the state of being in one place and not elsewhere." WEBSTER'S at 1793. "Present" means "being in one place and not elsewhere." Id.) The City of Sumner narrowed the definition of "remain" to "stay" or "linger." It did not broaden the definition to "presence" or its synonym "to be."
[7] Sumner's ordinance contains other vagueness infirmities as well. For example, the exemption in SMC 9.28.040(E) for coming directly home from a place of public entertainment creates confusion for a person of ordinary intelligence. If a movie ends at 12:31 A.M. on a Friday evening, a juvenile may lawfully travel home under the exemption, but he or she was in violation of the ordinance while at the movie theater for the last half hour of the show. SMC 9.28.020(A). This result does not make sense. It is also reasonable to wonder in this situation at which point should a police officer enforce the ordinance: while the juvenile is in the movie theater, as he or she is leaving, or is the juvenile traveling directly home at that point? Clearly, no standard is obvious in this situation other than arbitrary discretion.
[8] Although an ordinance that completely bans juveniles from being in public places after certain hours may survive a vagueness challenge, an ordinance might experience a more difficult time passing constitutional muster on the grounds Justice Chambers discusses in his concurring opinion, i.e., that the ordinance violates the constitutional right of a juvenile to move freely in public places. See Nunez, 114 F.3d at 943-44.
[1] I am indebted to Judge Agid's well reasoned opinion in State v. J.D., 86 Wash.App. 501, 937 P.2d 630 (1997) for much of my analysis.
[2] I focus on the impact of this ordinance on the constitutionally protected liberties of children. If the ordinance is an unconstitutional infringement on the child's liberties, to enforce it against the parent would effectively allow the State to infringe by proxy what it could not infringe directly.
[3] In Pullman, a case that predated some of the formalization of this constitutional analysis, we applied a variation of strict scrutiny to a minor curfew ordinance. We found that they were only "permissible where they are specific in their prohibition and necessary in curing a demonstrable social evil." Pullman, 82 Wash.2d at 803, 514 P.2d 1059; accord J.D., 86 Wash.App. 501, 937 P.2d 630. This is a substantially similar analysis to the modern strict scrutiny doctrine.
[4] Sumner is a small community. Its problems are not necessarily the same as Dallas, Texas's, or even Tacoma, Washington's. Evidence from a nearby and similar community might suffice. Certainly, it would be helpful to our inquiry to have such specific information. My analysis of the compelling state interest, and whether the ordinance was narrowly tailored to serve it, would be quite different if the Sumner police chief had reported that during the proceeding year or two, juveniles committed a significant percentage of crimes in a discernible geographic area within Sumner and between specific hours, or had reported that juveniles were victims of those crimes. It is possible that the city had received many complaints that juveniles were congregating at one or more of the convenience stores that stay open late in the city of Sumner, and because of their numbers, traffic was obstructed. It is possible that the city has received numerous complaints about noise created by young people gathering in the city's parks. Unfortunately, we have nothing but the best intentions of the city council, which is insufficient to pass constitutional muster.
[5] Certainly, a narrow and constitutionally permissible curfew could be crafted to meet a compelling need to address high crime, drug use, congregation of runaways, or other specific problem in a specific area. However, given constitutional protections, a permanent, blanket curfew covering every public place in a jurisdiction and every young person within that jurisdiction will unlikely ever satisfy the narrowly tailored test.
[6] I note that recently the curfew ordinance has been amended to add a First Amendment exception.
[1] A new ordinance has since been enacted that is in most respects the same as described in the text, with two additional exemptions: one for exercise of First Amendment rights, and one for juveniles who are married or emancipated pursuant to chapter 13.64 RCW. SMC 9.28.040 (Ordinance 2005, § 4 (2002)).
[2] The majority says that "`stay'" means "`stop going forward'" and "`to stop doing something,' "and "`linger'" means "`to be slow in parting or in quitting something.'" Majority at 1115 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2231, 1316 (1993)).
[3] This is true, incidentally, regardless of whether Mr. Walsh's challenge is viewed an equal protection challenge or a due process challenge, and thus the unclear nature of his challenge does not impede the analysis. See Adam W. Poff, Comment, A Tale of Two Curfews (and one City): What Do Two Washington, D.C. Juvenile Curfews Say about the Constitutional Interpretations of District of Columbia Courts and the Confusion over Juvenile Curfews Everywhere?, 46 VILL. L.REV. 277, 296 (2001) (if a law infringes on a fundamental right under either substantive due process or equal protection, the higher constitutional standard of strict scrutiny will apply).
[4] Laws of 1994, 1st Sp. Sess., ch. 7, § 503 (RCW 35A.11.210), provides:

(1) Any code city has the authority to enact an ordinance, for the purpose of preserving the public safety or reducing acts of violence by or against juveniles that are occurring at such rates as to be beyond the capacity of the police to assure public safety, establishing times and conditions under which juveniles may be present on the public streets, in the public parks, or in any other public place during specified hours.
(2) The ordinance shall not contain any criminal sanctions for a violation of the ordinance.
When enacting this statute, the legislature made legislative findings:
The legislature finds that the increasing violence in our society causes great concern for the immediate health and safety of our citizens and our social institutions. Youth violence is increasing at an alarming rate and young people between the ages of fifteen and twenty-four are at the highest risk of being perpetrators and victims of violence. Additionally, random violence, including homicide and the use of firearms, has dramatically increased over the last decade.
The legislature finds that violence is abhorrent to the aims of a free society and that it can not be tolerated. State efforts at reducing violence must include changes in criminal penalties, reducing the unlawful use of and access to firearms, increasing educational efforts to encourage nonviolent means for resolving conflicts, and allowing communities to design their prevention efforts.
Laws of 1994, 1st Sp. Sess., ch. 7, § 101 (emphasis added).
[5] This report skips from CP at 49 to CP at 63; pages were not filed sequentially in the clerk's papers.
[6] The court in Nunez v. City of San Diego, 114 F.3d 935 (9th Cir.1997), distinguished Qutb when it held that the San Diego ordinance at issue in Nunez unconstitutionally infringed upon a parent's right to rear a child. The court noted that the San Diego ordinance did not allow a parent to preapprove even a specific activity after curfew hours unless the child was accompanied by a custodial adult. Nunez, 114 F.3d at 952.