FAIRHURST, C.J.
*832 ¶ 1 Sixteen year old Tyler William Watkins was charged with first degree burglary in adult court pursuant to former ROW 13.04.030(1) (2009), amended by Laws of 2018, chapter 162, section 1.[1] Former RCW 13.04.030(1) (2009), part of the Basic Juvenile Court Act (BJCA), provided that juvenile courts must automatically decline jurisdiction over 16 and 17 year olds charged with enumerated offenses. Watkins argues that his due process rights were violated because the automatic decline component of former RCW 13.04.030(1) (2009) applied without him first having a hearing on whether the juvenile court should retain jurisdiction. As we previously did in In re Boot, 130 Wash.2d 553, 925 P.2d 964 (1996) (upholding former RCW 13.04.030(1) (1994) against substantive and procedural due process challenges), we again hold that automatic decline does not violate due process because juveniles do not have a constitutional right to be tried in juvenile court. We affirm the conviction.
I. FACTS AND PROCEDURAL HISTORY
¶ 2 Watkins was charged with one count of first degree burglary based on information that he and his younger brother broke into the victim's home and stole nine firearms when the victim was gone. Watkins' fingerprints matched those found at the scene of the crime, and a search of Watkins' home revealed three of the nine firearms that were stolen in the burglary.
¶ 3 Watkins was 16 years old at the time he was charged and he had a prior felony conviction for theft of a firearm. The information was filed in superior court pursuant to former RCW 13.04.030(l)(e)(v)(D) (2009), which required the juvenile court to automatically decline jurisdiction over a 16 or 17 year old with a prior felony conviction who was subsequently charged with first degree burglary. Before trial, Watkins filed a motion objecting to automatic transfer of his case to superior court, arguing that automatic decline violates federal due process; the Eighth Amendment to the United States Constitution; and article I, section 14 of the Washington Constitution (prohibiting cruel punishment). The trial court denied the motion on the basis that it was bound by this court's determination in Boot, 130 Wash.2d at 557-58, 925 P.2d 964.
¶ 4 Watkins stipulated to a bench trial on agreed documentary evidence and was found guilty as charged. Accepting the parties' recommendation, the trial court sentenced Watkins to 16 months in prison and 18 months on *833 community supervision. Watkins appealed, and we granted direct review.
II. ISSUES
A. Does a juvenile court's automatic declination of jurisdiction under former RCW 13.04.030(1) (2009) violate a juvenile defendant's procedural or substantive due process rights?
B. Has Boot's substantive due process holding been abrogated by subsequent decisions of this court or the United States Supreme Court?
III. STANDARD OF REVIEW
¶ 5 The constitutionality of a statute is reviewed de novo. State v. Jorgenson, 179 Wash.2d 145, 150, 312 P.3d 960 (2013). The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional beyond a reasonable doubt. State v. Leatherman, 100 Wash. App. 318, 321, 997 P.2d 929 (2000). If possible, the court will construe a statute so as to render it constitutional. Jorgenson, 179 Wash.2d at 150, 312 P.3d 960.
IV. ANALYSIS
¶ 6 Watkins contends that former RCW 13.04.030(1) (2009) is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution.[2] Specifically, Watkins argues that automatic decline violates procedural due process by depriving him of his right to a hearing[3] in juvenile court.[4] He also argues that automatic decline violates substantive due process by depriving him of his right to be punished in accordance with his level of culpability. Watkins and amici (Juvenile Law Center, American Civil Liberties Union of Washington, and others) make numerous policy arguments in favor of prosecuting all juveniles in juvenile Court[5] but fail to show that a Kent hearing in juvenile court is required by the United States Constitution under this particular statutory scheme. See Kent v. United States, 383 U.S. 541, 557, 86 S.Ct. 1045, 16 L. Ed. 2d 84 (1966). The Washington State Legislature created our juvenile court system and therefore has the power to define its jurisdiction. RCW 13.04.021. There is no constitutional right to be tried in juvenile court and, hence, *834 no constitutional right to a Kent hearing before being tried in adult court. Boot, 130 Wash.2d at 569-72, 925 P.2d 964.
¶ 7 Watkins also contends that this court's decision in Boot, which upheld the constitutionality of former RCW 13.04.030(1) (1994) against due process, Eighth Amendment, and equal protection challenges, has been abrogated by Eighth Amendment decisions of both this court and the United States Supreme Court. However, Boot's reasoning is sound, and its due process holdings have not been undermined by subsequent Eighth Amendment decisions. Automatic decline does not implicate the Eighth Amendment's prohibition on cruel and unusual punishment because adult courts have discretion to depart from standard sentence ranges to avoid excessive punishment of juveniles. See State v. Houston-Sconiers, 188 Wash.2d 1, 21, 391 P.3d 409 (2017).[6]
A. Former RCW 13.04.030(1) (2009) does not deprive Watkins of any due process right because there is no constitutional right to be tried in juvenile court
¶ 8 Watkins contends that due process requires a Kent hearing before a juvenile court may decline jurisdiction over a juvenile charged with one of the offenses enumerated in former RCW 13.04.030(1) (2009). Juveniles charged with crimes have a right to procedural due process. In re Gault, 387 U.S. 1, 30-31, 87 S.Ct. 1428, 18 L. Ed. 2d 527 (1967). "[T]he Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L. Ed. 2d 494 (1985). Due process " 'is not a technical conception with a fixed content unrelated to time, place and circumstances.' " Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L. Ed. 2d 1230 (1961) (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 162-63, 71 S.Ct. 624, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L. Ed. 2d 484 (1972). Compliance with procedural due process requires the court to identify the private interest affected by the official action, the risk of erroneous deprivation, the probable value of additional safeguards, and the State's interests. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L. Ed. 2d 18 (1976).
¶ 9 " '[T]here is no constitutional right to be tried in a juvenile court.' " Boot, 130 Wash.2d at 571, 925 P.2d 964 (alteration in original) (quoting State v. Dixon, 114 Wash.2d 857, 860, 792 P.2d 137 (1990) ); State v. Maynard, 183 Wash.2d 253, 259, 351 P.3d 159 (2015) ; In re Pers. Restraint of Dalluge, 152 Wash.2d 772, 783 n.8, 100 P.3d 279 (2004) ; State v. Oreiro, 73 Wash. App. 868, 873, 871 P.2d 666 (1994) ; State v. Sandomingo, 39 Wash. App. 709, 711, 695 P.2d 592 (1985) ; State v. Sharon, 33 Wash. App. 491, 494, 655 P.2d 1193 (1982)aff'd, 100 Wash.2d 230, 668 P.2d 584 (1983) ; State v. Hodges, 28 Wash. App. 902, 904, 626 P.2d 1025 (1981). And "the right [to a Kent hearing] attaches only if a court is given statutory discretion to assign juvenile or adult court jurisdiction." State v. Salavea, 151 Wash.2d 133, 140, 86 P.3d 125 (2004) ; Boot, 130 Wash.2d at 570, 925 P.2d 964.
¶ 10 The Washington State Legislature created the juvenile court system by enacting the BJCA. RCW 13.04.021. The BJCA provides that the juvenile court shall have exclusive original jurisdiction over all proceedings relating to juvenile offenses-but requires the juvenile court to automatically decline jurisdiction over 16 and 17 year olds charged with an enumerated offense.[7]
*835 RCW 13.04.030(l)(e)(v). Only an adult court may preside over such proceedings. Id. We upheld the constitutionality of automatic decline in Boot. 130 Wash.2d at 557-58, 925 P.2d 964.[8] This court will reject its prior holdings only on a clear showing that an established rule is incorrect and harmful. State v. Otton, 185 Wash.2d 673, 678, 374 P.3d 1108 (2016).
¶ 11 In Boot, two 16 year old juvenile defendants were charged with violent crimes and prosecuted in adult criminal court pursuant to former RCW 13.04.030(l)(e) (1994). 130 Wash.2d at 558-60, 925 P.2d 964. Defendants challenged the constitutionality of automatic decline under a variety of different theories, including that it violated the defendants' due process rights and the Eighth Amendment. Id. at 569-72, 925 P.2d 964. With regard to the procedural due process challenge, this court held that there is no constitutional right to be tried in a juvenile court and the statute does not deprive the defendants "of any constitutionally protected right merely by conferring adult criminal court jurisdiction over them without a hearing." Id. at 571, 925 P.2d 964. This court held that automatic decline did not violate substantive due process because it did not deprive juveniles of their right to be punished in accordance with their degree of culpability. Id. at 572, 925 P.2d 964. Regarding the Eighth Amendment challenge, we held that vesting adult court jurisdiction over a juvenile without a hearing does not violate the Eighth Amendment because adult court jurisdiction is not punishment in and of itself. Id. at 569, 925 P.2d 964. "The Eighth Amendment question will not ordinarily be ripe for adjudication until [the defendants] are actually sentenced." Id.
¶ 12 Watkins argues that the Supreme Court's holding in Kent, which was decided 30 years before Boot, is inconsistent with automatic decline and establishes a constitutional right to a hearing before a juvenile is tried in adult court. In Kent, 16 year old Morris Kent was arrested after a home invasion, rape, and robbery. 383 U.S. at 543, 86 S.Ct. 1045. He was charged in juvenile court under a statute requiring that juvenile courts have exclusive jurisdiction over juvenile offenders. Id. at 546, 86 S.Ct. 1045. The statute allowed the juvenile court to transfer jurisdiction to adult court after compliance with procedural safeguards and a full investigation into the facts of the case. Id. at 546 n.4, 565-68, 86 S.Ct. 1045. Kent's lawyer moved for a full investigation under the statute, but the juvenile court ignored the motion and transferred Kent's case to adult court without an investigation or hearing. Id. at 546, 86 S.Ct. 1045.
¶ 13 The Supreme Court held that the trial court's failure to follow the statutory procedures, state the reasons for transfer, and hold a hearing required reversal of the juvenile court's order. Id. at 557-63, 86 S.Ct. 1045. "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony-without hearing, without effective assistance of counsel, without a statement of reasons." Id. at 554, 86 S.Ct. 1045.
¶ 14 Careful consideration of the statutory framework underlying the Kent decision suggests that Kent's holding is limited to circumstances where a juvenile court has statutory discretion to retain or transfer jurisdiction.[9]
*836 The statute in Kent provided the juvenile court with jurisdiction over all juvenile proceedings and the discretion to waive jurisdiction over a particular class of juvenile defendants.[10] In contrast, former RCW 13.04.030(1) (2009) precludes our juvenile courts from presiding over a particular class of juveniles. Kent's hearing requirement makes sense in the context of the D.C. statute because the juvenile court was vested with discretion to make a jurisdictional decision. But a hearing requirement would be absurd under Washington law because our juvenile court is statutorily precluded from presiding over this type of case. Boot, 130 Wash.2d at 563, 925 P.2d 964 ("The statute does not contemplate declination hearings, and they would serve no purpose in light of the legislative decision to vest exclusive original jurisdiction in the adult criminal court."). Thus, Kent's holding must be limited to circumstances where a juvenile court has statutory authority to hear a particular case. Because Kent is distinguishable on statutory grounds, its holding has no bearing on the constitutionality of former RCW 13.04.030(1) (2009).
¶ 15 Resolving the procedural due process issue requires analysis of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews, 424 U.S. at 335-36, 96 S.Ct. 893.
¶ 16 Regarding the private interest factor, Watkins has a reasonable interest in remaining in juvenile court because juvenile court carries with it the potential for lighter punishment. RCW 13.40.300. However, Watkins does not have a constitutional right to be tried in juvenile court. See, e.g., Dixon, 114 Wash.2d at 860, 792 P.2d 137. Regarding the erroneous deprivation factor, the risk that automatic decline will erroneously deprive Watkins of his interest in juvenile court is low because there is no discretion involved in the declination of jurisdiction-Watkins was either charged with an enumerated offense or he was not. Former RCW 13.04.030(1) (2009). The only discretion involved in the automatic decline process lies in the hands of the prosecutor, who will sometimes have the discretion to charge a defendant with an enumerated offense triggering automatic decline. These charging decisions are unlikely to erroneously deprive Watkins of his interest in juvenile court because criminal charges must be supported by probable cause. State v. Rice, 174 Wash.2d 884, 889, 279 P.3d 849 (2012) ("[T]he legislature checks prosecutors ... by defining the particular acts and circumstances that may warrant criminal punishment ... and the judiciary checks ... prosecutors by reviewing probable cause.").
¶ 17 A Kent hearing has no value as an additional safeguard here because, regardless of the outcome of a Kent hearing, the juvenile court cannot exercise jurisdiction over Watkins' case. Former RCW 13.04.030(l)(e)(v)(D) (2009). Thus, Watkins' argument that due process requires a Kent hearing in juvenile court is unconvincing. Boot, 130 Wash.2d at 571, 925 P.2d 964 ; Salavea, 151 Wash.2d at 140, 86 P.3d 125 ("[T]he right [to a Kent hearing] attaches only if a court is given statutory discretion to assign juvenile or adult court jurisdiction.").
¶ 18 With regard to the government interest factor, the State has a legitimate interest *837 in deterring violent crime, and this interest is furthered by the threat of harsher punishment in the adult system. Requiring a court to conduct a Kent hearing under these circumstances would place an unnecessary burden on judicial resources because the juvenile court is statutorily precluded from hearing this case. Former RCW 13.04.030(1) (2009). Having weighed the Mathews factors, we hold that automatic decline comports with procedural due process.
¶ 19 Watkins' argument that automatic decline violates substantive due process because it deprives him of his right to be sentenced in accordance with his culpability is also unconvincing. Under Houston-Sconiers, adult courts have discretion to consider the mitigating qualities of youth and sentence below the standard range in accordance with a defendant's culpability. 188 Wash.2d at 21, 391 P.3d 409. The automatic decline component of former RCW 13.04.030(1) (2009) does not violate substantive due process.
B. The substantive due process holding in Boot has not been abrogated by subsequent decisions of this court or the United States Supreme Court
¶ 20 Watkins argues that our holding in Boot regarding substantive due process has been abrogated by this court's holding in Houston-Sconiers and several Supreme Court cases: Miller v. Alabama, 567 U.S. 460, 479, 132 S.Ct. 2455, 183 L. Ed. 2d 407 (2012) (holding that the Eighth Amendment requires individualized sentencing for juveniles convicted of murder facing a potential sentence of life without parole); Roper v. Simmons, 543 U.S. 551, 569-75, 125 S.Ct. 1183, 161 L. Ed. 2d 1 (2005) (holding that the Eighth Amendment precludes the death penalty for juveniles); Graham v. Florida, 560 U.S. 48, 62, 130 S.Ct. 2011, 176 L. Ed. 2d 825 (2010) (holding that the Eighth Amendment precludes life imprisonment without parole for a juvenile who did not commit homicide); J.D.B. v. North Carolina, 564 U.S. 261, 131 S.Ct. 2394, 180 L. Ed. 2d 310 (2011) (holding that youth is a relevant factor in assessing whether a reasonable person would believe he or she is in custody under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966) ). With the exception of J.D.B., each of these cases was decided on Eighth Amendment grounds and prohibits juveniles from receiving the harshest sentences-death, mandatory life without parole, and life without parole for a nonhomicide offense.[11]
¶ 21 This line of cases emphasized the principle that juveniles are developmentally different from adults and that these differences are relevant to juvenile defendants' constitutional rights. This principle is supported by a substantial body of developmental research and neuroscience demonstrating significant psychological differences between juveniles and adults. See, e.g., Graham, 560 U.S. at 68, 130 S.Ct. 2011 ("developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"). Specifically, research shows that " 'children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking.' " Montgomery v. Louisiana, --- U.S. ----, 136 S.Ct. 718, 733, 193 L. Ed. 2d 599 (2016) (internal quotation *838 marks omitted) (quoting Miller, 567 U.S. at 471, 132 S.Ct. 2455 ). Juveniles are also highly susceptible to " 'negative influences and outside pressures,' " and have limited " 'contro[l] over their own environment.' " Miller, 567 U.S. at 471, 132 S.Ct. 2455 (alteration in original) (quoting Roper, 543 U.S. at 569, 125 S.Ct. 1183 ). Youthful offenders have a greater capacity for rehabilitation than adults because a child's character is " 'not as well formed' " as an adult's and " 'a greater possibility exists that a minor's character deficiencies will be reformed.' " Graham, 560 U.S. at 68, 130 S.Ct. 2011 (quoting Roper, 543 U.S. at 569-70, 125 S.Ct. 1183 ). The Supreme Court has held that these developmental characteristics indicate that youthful defendants are generally less culpable than their adult counterparts. Roper, 543 U.S. at 570, 125 S.Ct. 1183. It follows naturally that any constitutional analysis weighing the culpability or decision-making skills of a youthful defendant should take youthfulness into account.
¶ 22 We addressed the diminished culpability of youthful defendants in Houston-Sconiers, where we held that the Eighth Amendment gives trial courts discretion to sentence juveniles below the standard sentencing range because "children are different." 188 Wash.2d at 9, 391 P.3d 409. In that case, two juvenile offenders, ages 16 and 17, were charged with a host of crimes relating to a Halloween robbery that brought them automatically into adult court under former RCW 13.04.030(l)(e)(v)(C) (2009). The trial court noted that it had no discretion to sentence the juveniles below the standard range and sentenced them to 312 and 372 months, respectively. Id. at 12-13, 391 P.3d 409. The defendants appealed, and the Court of Appeals reversed. Id. at 13, 391 P.3d 409. In accordance with Miller, we held that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not." Id. at 21, 391 P.3d 409. We affirmed the Court of Appeals and explained that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable [Sentencing Reform Act of 1981, chapter 9.94A RCW,] range and/or sentence enhancements." Id. We declined to address the validity of automatic decline under former RCW 13.04.030(1) (2009). Id. at 27, 391 P.3d 409 n.11.
¶ 23 Our reasoning in Houston-Sconiers affirms rather than undermines our holding in Boot. Houston-Sconiers and Miller were concerned with the "choice between extremes" that judges face when determining whether to assign juvenile or adult court jurisdiction. Miller, 567 U.S. at 488, 132 S.Ct. 2455. But Washington no longer faces a choice between extremes because this court declared in Houston-Sconiers that trial courts have discretion to sentence juveniles below the applicable sentencing range in accordance with their culpability. 188 Wash.2d at 21, 391 P.3d 409 ; see State v. O'Dell, 183 Wash.2d 680, 689, 358 P.3d 359 (2015) (holding that adult courts may also consider the youthful nature of young adults as a mitigating factor at sentencing). Put simply, automatic decline does not violate a juvenile defendant's substantive due process right to be punished in accordance with his or her culpability because adult courts can take into account the "mitigating qualities of youth at sentencing." Houston-Sconiers, 188 Wash.2d at 21, 391 P.3d 409.
¶ 24 Watkins contends that Houston-Sconiers , Miller , Roper, and Graham require more than simply taking into account a defendant's youthfulness at sentencing-he argues that they establish a substantive due process right to a Kent hearing before being transferred to adult court. This argument lacks merit. The principle that juveniles are developmentally different from adults factors into a court's decision regarding a youthful defendant's culpability, like in Roper, Miller, and Graham, or a youthful defendant's subjective mental state, like in J.D.B. That principle does not factor into our determination of whether a jurisdictional statute like former RCW 13.04.030 (2009) is constitutional because resolving this issue does not require us to assess a youthful defendant's culpability or subjective mental state. To resolve this issue we need decide only whether the legislature *839 has the authority to define the scope of juvenile court jurisdiction. The answer is yes-the legislature can define the scope of juvenile court jurisdiction because the legislature itself created the juvenile court system and there is no constitutional right to be tried in juvenile court. RCW 13.04.021 ; Boot, 130 Wash.2d at 571, 925 P.2d 964 ; Maynard, 183 Wash.2d at 259, 351 P.3d 159 ; Dalluge, 152 Wash.2d at 783 n.8, 100 P.3d 279 ; Oreiro, 73 Wash. App. at 873, 871 P.2d 666 ; Sandomingo, 39 Wash. App. at 711, 695 P.2d 592 ; Sharon, 33 Wash. App. at 494, 655 P.2d 1193 ; Hodges, 28 Wash. App. at 904, 626 P.2d 1025.
V. CONCLUSION
¶ 25 This court already considered the constitutionality of former RCW 13.04.030(1) (1994) in Boot and held that automatic decline did not violate due process. 130 Wash.2d at 571-72, 925 P.2d 964. The reasoning in Boot is sound and has not been undermined by subsequent decisions of this court or the Supreme Court. We therefore affirm the trial court's ruling that the automatic decline component of former RCW 13.04.030(1) (2009) does not violate due process.
WE CONCUR:

The 2018 amendment to RCW 13.04.030(l)(e)(v)(D) removed first degree burglary and several other crimes from the list of enumerated offenses that would automatically subject a juvenile offender to adult court jurisdiction. The amendment did not moot the constitutional issue presented in this case because this amendment does not apply retroactively and because the amendment did not remove the automatic decline component of former RCW 13.04.030(1) (2009). The amendment narrowed the scope of juvenile offenders who would be charged automatically in adult court but still requires juvenile courts to automatically decline jurisdiction over juveniles charged with certain violent offenses. The amendment has no bearing on our resolution of this constitutional issue.

Watkins does not invoke the due process protections of the Washington Constitution.

This hearing is sometimes referred to as a "Kent hearing" because of the United States Supreme Court's decision in Kent v. United States, 383 U.S. 541, 566-67, 86 S.Ct. 1045, 16 L. Ed. 2d 84 (1966), which laid out the relevant factors a juvenile court must consider before exercising its discretion to assign adult court jurisdiction. See, e.g., United States v. Bland, 153 U.S. App. D.C. 254, 472 F.2d 1329, 1344 n.8 (1972) (Wright, J., dissenting) (using the term "Kent hearing").

Watkins attempts to bolster his argument by pointing out that several other states have banned automatic decline statutes, including Delaware, Nevada, Missouri, and Hawaii. Hughes v. State, 653 A.2d 241, 252 (Del. 1994) (Fourteenth Amendment and state constitution); In re William M., 124 Nev. 1150, 1152, 196 P.3d 456 (2008) (Fifth Amendment right against self-incrimination); Mo. Rev. Stat. § 211,031; Haw. Rev. Stat. § 571-22. However, some of these states removed automatic decline procedures by statutory amendment. Only the Delaware Supreme Court case actually supports Watkins' argument that the federal constitution provides the right to a Kent hearing. Hughes, 653 A.2d 241. The statute in Hughes automatically transferred juvenile felony cases to adult court if the juvenile turned 18 before the date of adjudication. Id. at 247. Concerned that prosecutors could strategically delay the adjudication of 17 year olds in order to subject them to adult court jurisdiction, the court said that juveniles had a constitutional right to a hearing that would consider "the nature of the offense rather than the nature of the charge ." Id. at 251. Here, former RCW 13.04.030(1) (2009) took into consideration both the nature of the offense and the nature of the charge. Thus, the persuasive value of Hughes is severely limited.

Watkins and amici argue, among other things, that juveniles transferred to the adult system "reoffend more quickly and are more likely to engage in violent crimes after release than youths processed in the juvenile justice system." Jason J. Washburn, et al., Psychiatric Disorders among Detained Youths: A Comparison of Youths Processed in Juvenile Court and Adult Criminal Court, 59 Psychiatric Servs. 965, 972 (2008). They also argue that juveniles are less likely to receive age-appropriate treatment and education in adult facilities because adult corrections personnel lack the specialized training needed to treat juveniles' mental health issues. Campaign for Youth Justice, the Consequences Aren't Minor: the Impact of Trying Youth as Adults and Strategies for Reform 7 (2007), http://www.justicepolicy.org/research/1965 [https://perma.cc./ZT9A-A26R].

Watkins also argues that if the juvenile court had held a hearing to determine whether to assign juvenile or adult court jurisdiction, the juvenile court would have assigned juvenile court jurisdiction. However, this argument has no bearing on the constitutionality of former RCW 13.04.030(1) (2009), and this court lacks a record sufficient to determine the outcome of a Kent hearing. Therefore, we do not reach this issue.

Former RCW 13.04.030 (2009) provides, in pertinent part:
(1) Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings:
....
(e) Relating to juveniles alleged or found to have committed offenses, traffic or civil infractions, or violations as provided in RCW 13.40.020 through 13.40.230, unless:
....
(v) The juvenile is sixteen or seventeen years old on the date the alleged offense is committed and the alleged offense is:
....
(D) Burglary in the first degree committed on or after July 1, 1997, and the juvenile has a criminal history consisting of one or more prior felony or misdemeanor offenses.

The D.C. Circuit upheld a similar statute against a due process challenge in Bland, 472 F.2d at 1335-36 (holding that a statute requiring 16 and 17 year old juveniles charged with a felony offense to be charged in adult court does not violate due process).

The Supreme Court discussed automatic adult court statutes in a recent decision and made no indication that the statutes are unconstitutional:
[M]any States use mandatory transfer systems: A juvenile of a certain age who has committed a specific offense will be tried in adult court, regardless of any individualized circumstances. Of the 29 relevant jurisdictions, about half place at least some juvenile homicide offenders in adult court automatically, with no apparent opportunity to seek transfer to juvenile court.
Miller v. Alabama, 567 U.S. 460, 487, 132 S.Ct. 2455, 183 L. Ed. 2d 407 (2012).

The statute in Kent provided:
" 'If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this subchapter in conducting and disposing of such cases.' "
383 U.S. at 547-48, 86 S.Ct. 1045 (quoting former D.C. CODE § 11-914 (1947)).

In J.D.B., the Supreme Court held that a juvenile's age properly informs the Miranda custody analysis if the officer knew or should have known the juvenile's age. J.D.B., 564 U.S. at 271-72, 131 S.Ct. 2394. "We have observed that children 'generally are less mature and responsible than adults,' [and] that they 'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.' " Id. at 272, 131 S.Ct. 2394 (citations omitted) (quoting Bellotti v. Baird, 443 U.S. 622, 635, 99 S.Ct. 3035, 61 L. Ed. 2d 797 (1979) (plurality opinion)). "Addressing the specific context of police interrogation, we have observed that events that 'would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens.' " Id (quoting Haley v. Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 92 L. Ed. 224 (1948) (plurality opinion)). The Court's holding in J.D.B. indicates that the principle of treating youthful defendants differently than adults is properly applied in the due process context where a youthful defendant's subjective mental state is a critical part of the constitutional analysis. Resolving the question of whether former RCW 13.04.030(1) (2009) is constitutional does not require us to analyze the subjective mental state of a youthful defendant. Therefore, J.D.B. does not guide our resolution of this issue.