# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51511-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAKOTA MIKALLE COLLINS, | |
| Appellant. | |

GLASGOW, J. — Dakota M. Collins and some friends were attempting to rob Lorenzo Parks when Collins shot Parks in 2016.  Collins was 16 years old at the time.  Collins was charged with second degree murder with a firearm enhancement, attempted first degree robbery, and two counts of second degree unlawful possession of a firearm.  The juvenile court automatically declined jurisdiction.  Collins pleaded guilty to these charges.

Collins appeals, arguing that the automatic decline of juvenile court jurisdiction violated due process and that the superior court failed to consider his youth as a mitigating factor when sentencing him.  Collins also appeals the imposition of certain legal financial obligations.

No. 51511-3-II

We affirm Collins's convictions and sentence. We reverse the imposition of the criminal filing fee, the DNA collection fee, and the interest accrual provision. We remand to the trial court to address these obligations.

FACTS

In 2017, Collins was charged as an adult under the statute establishing automatic decline of juvenile court jurisdiction for serious violent offenses committed when the offender is 16 or 17 years old. Former RCW 13.04.030(1)(v) (2009). Collins pleaded guilty. He admitted that he intentionally shot the victim while he and his co-defendants were attempting to take the victim's property. Under the terms of the guilty plea, the State agreed to recommend a standard range sentence of 200 months plus the 60 month firearm enhancement for the second degree murder, while Collins could argue for a lower sentence, as low as 66 months.

Collins filed a sentencing memorandum arguing for an exceptional mitigated sentence of 96 months. Collins argued that his youth, combined with the circumstances of his upbringing, warranted an exceptional mitigated sentence below the standard range. Collins also relied on his diagnoses for attention deficit hyperactivity disorder and oppositional defiant disorder, likely related to his biological mother's drug use during pregnancy. In addition, Collins was suffering from post-traumatic stress disorder due to abuse he endured at a military academy that he attended for a period of time. Collins also had a history of abusing drugs and alcohol in the time preceding the shooting. Collins submitted an expert's report detailing the impact of these conditions and his youth on his judgment and ability to control impulses. In total, Collins

provided the superior court with over 100 pages of argument and documentation supporting his request for an exceptional mitigated sentence.

Prior to the sentencing hearing the superior court reviewed all of the materials Collins had submitted. Both the State and Collins made extensive arguments regarding how Collins's youth should impact the sentence imposed. The superior court also allowed Collins to present testimony from the expert regarding the effects of youth and post-traumatic stress on Collins's judgment and behavior at the time of the crime.

The superior court entered an extensive ruling regarding Collins's sentence. Throughout the ruling the superior court made it clear that it recognized its discretion to impose an exceptional mitigated sentence based on Collins's youth:

> And there's, I think, a very real concern by the family members here of Mr. Parks that that's what this is all about. That the [*State v.*] *Houston-Sconiers*'s [188 Wn.2d 1, 391 P.3d 409 (2017)] decision means that if you commit a violent, horrific act where someone is shot and killed, that we are supposed to, because of your youth, give you a slap on the hand and put you through some rehabilitative programming and expect you to become a contributing member of society.
> And while I do agree that rehabilitation should be part of this, punishment is also a part of this. Deterrence is part of this. . . . Protection of the public is a part of this. And this was not – and just reading the statement in paragraph 11 of your plea, this was not your first felony conviction, is my understanding. You were previously convicted of a felony offense as a juvenile, which prevents you from having a firearm in any event. So despite the things that were being done for you or with you, you made very bad choices, and continued to make very bad choices.
> . . . .
> I agree with [defense counsel] that I don't think the *Houston-Sconiers* or the line of cases leading up to it supports the idea that if the State amends the charges or recommends something below the high end of the range, that that's taking into consideration youth and age and all those things that [*Houston-Sconiers*] talks about. But I do think that the Court isn't going to ignore that, because clearly I would have expected that that's part of what was taken into consideration by the

State. *But I believe that the Court shouldn't defer to the State and assume that they did that, but do its own assessment of that.*

I do think there's a significant difference factually between *Houston-Sconiers* and this case, as well as the punishment. And there, I do think it was a situation where, thankfully, no one was killed, but it was a piling-on of consecutive sentencing enhancements that I think that even the judge in that case felt duty-bound to follow, and yet it was at a very extreme sentence. That's not this case.

. . . .

And I want you to know that *I appreciate the materials that [defense counsel] has put forward, and that has given me – that I've given a great deal of thought to that.*

. . . .

*I do think that Houston-Sconiers requires the Court to consider all of the factors, not just the act itself.* But it can't – it's like, okay, how do you consider immaturity or failure to appreciate risks and consequences. You don't consider those in a vacuum. You consider them in the context of what brings us all here today, and that is that you chose to pull the trigger, and a person died as a result.

. . . .

And to Mr. Collins, *considering all of these factors*, including all of the goals of sentencing that I've already touched on, of what is a just punishment, what will be a deterrent, what would it take to rehabilitate you – which I honestly didn't hear a lot about – and how do we protect the public, I do think a sentence within the standard sentencing range is appropriate, plus the firearm sentencing enhancement and a period of community custody.

Verbatim Report of Proceedings (Vol. 1) (Oct. 5, 2017) at 71-77 (emphasis added). The superior court denied Collins's request for an exceptional mitigated sentence and imposed the State's recommended, standard range sentence of 260 months for the second degree murder, including the firearm enhancement. The sentences for the rest of the convictions would be served concurrently, so the total term of confinement was 260 months. The superior court also imposed a $500 crime victim assessment, a $100 DNA database fee, and a $200 criminal filing fee.

Collins appeals his conviction and sentence.

ANALYSIS

A.      Juvenile Court Jurisdiction

Collins argues that the automatic decline of juvenile court jurisdiction violated his right to due process. Recently, in *State v. Watkins*, 191 Wn.2d 530, 423 P.3d 830 (2018), our Supreme Court held that automatic decline of juvenile court jurisdiction does not violate procedural or substantive due process. Therefore, Collins's argument fails.

Former RCW 13.04.030(1)(v) (2009), which applied at the time Collins committed his crime, provided that juvenile courts must automatically decline jurisdiction over juveniles who have committed certain offenses when they were 16 or 17 years old.[1] In *Watkins*, the appellant challenged the constitutionality of former RCW 13.04.030 on due process grounds arguing that due process requires that all juveniles receive an individualized hearing before the juvenile court may decline jurisdiction. *Watkins*, 191 Wn.2d at 537. Our Supreme Court held that "automatic decline comports with procedural due process." *Id.* at 542. Juveniles have no constitutional right to be tried in juvenile court. *Id.* at 541. And automatic decline of juvenile court jurisdiction does not violate substantive due process because "adult courts have discretion to consider the mitigating qualities of youth and sentence below the standard range in accordance with a defendant's culpability." *Id.* at 542-43. Finally, recent developments in United States Supreme Court and Washington Supreme Court jurisprudence regarding sentencing for juveniles and youthful offenders did not undermine this holding. *Id.* at 543-46.

---

[1] The legislature amended RCW 13.04.030 in 2019 in ways not relevant to this case. The *Watkins* court also addressed the version of the statute adopted in 2009.

Our Supreme Court has rejected the argument that automatic decline of juvenile court jurisdiction violates due process. Therefore, we affirm Collins's convictions.

B.      Sentencing

Collins also argues that the superior court abused its discretion by refusing to impose a mitigated sentence below the standard range based on Collins's youth and traumatic upbringing. We disagree.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, prohibits appeal of a standard range sentence. RCW 9.94A.585(1). However, a defendant may challenge the procedure by which a standard range sentence is determined, including the rejection of a request for an exceptional mitigated sentence. *State v. Garcia-Martinez*, 88 Wn. App. 322, 329-30, 944 P.2d 1104 (1997). Review in such cases "is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *Id.* at 330.

A sentencing court has improperly refused to exercise its discretion if it determined that youth is not a factor that can justify an exceptional mitigated sentence. *State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015), *review denied*, 189 Wn.2d 1007 (2017). In *Houston-Sconiers*, our Supreme Court held that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." 188 Wn.2d at 21. However, *Houston-Sconiers* does not *require* the trial court to impose a sentence outside of the standard range if the trial court considers the qualities of youth at sentencing and determines that a standard range sentence is appropriate. *See id.*

Here, the superior court was well aware of its ability and discretion to impose an exceptional mitigated sentence based on Collins's youth. And the superior court considered all of the materials Collins provided, expert testimony presented, as well as the extensive arguments regarding Collins's youth and the *Houston-Sconiers* decision, before determining that the standard range sentence plus the firearm enhancement recommended by the State was appropriate. The superior court did not categorically refuse to exercise its discretion—rather, it exercised discretion and determined that the facts and circumstances did not warrant an exceptional mitigated sentence. Therefore, we affirm Collins's standard range sentence.

## C.     Legal Financial Obligations

Collins also argues that we should reverse the imposition of certain legal financial obligations and remand to the trial court to apply the 2018 legislative amendments. We agree.

In 2018, the legislature amended several statutes addressing legal financial obligations. LAWS OF 2018, ch. 269. Our Supreme Court has held that these amendments apply prospectively and are applicable to cases, like this one, that are pending on direct review and not final when the amendment was enacted. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). After the 2018 amendments, the relevant statutes prohibit the superior courts from imposing the $200 criminal filing fee on indigent defendants and the $100 DNA collection fee if the offender's DNA has already been collected as the result of a prior conviction. RCW 36.18.020(2)(h); RCW 43.43.7541. The amendments also prohibit the accrual of interest on nonrestitution legal financial obligations. LAWS OF 2018, ch. 269, § 1; *see* RCW 10.82.090.[2]

---

[2] The crime victim assessment fee is not impacted by a defendant's indigency, RCW 9.94A.760(1), and Collins does not challenge this obligation.

No. 51511-3-II

Here, the State concedes that the criminal filing fee, the DNA collection fee, and the accrual of interest on nonrestitution legal financial obligations should be stricken from the judgment and sentence. Therefore, we reverse imposition of these fees and interest on nonrestitution LFOs and remand for the trial court to address them in light of new legislation and *Ramirez*.

In sum, we affirm the convictions and sentence. We reverse the imposition of the criminal filing fee, the DNA collection fee, and the interest accrual provision. We remand to the trial court to address these obligations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Melnick, P.J.

Sutton, J.

8