

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39696-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIFFANY R. DENNEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — After Tiffany Denney's dog attacked and injured a Whitman

County Sherriff's Deputy, a jury convicted her of "owning a dog that attacks," in

violation of RCW 16.08.100.  On appeal, she contends (1) the State's evidence was

insufficient to convict, and (2) Washington's dangerous dog statutes are

unconstitutionally vague, both facially and as applied.  We disagree and affirm.

BACKGROUND

Tiffany Denney lives in rural Endicott, Washington.  Denney's property consists

of a single-story house, surrounded by a chain link fence that is between three and five

feet tall with a gate that closes with a latch.  Denney owned multiple dogs, including a

five-year-old pit bull mixed breed, which Denney had raised since it was a puppy.

On September 9, 2022, a Whitman County Sheriff's Deputy and Sergeant were dispatched to Denney's home for a nonemergency welfare check. When they arrived, Deputy Amy Pilloud observed a small dog in the front yard. She hesitated to enter the fenced area because of the dog, but after it approached her, sniffed her fingers, and appeared friendly, she decided to enter through the gate and knock on the front door of the house.

Deputy Pilloud made it a few steps into the yard when she "heard a loud bark, growl from the back of the house." Rep. of Proc. (RP) at 118. She turned to the side of the house and saw a different dog running toward her at full speed. The dog lunged at her, hitting her in the chest. As she scrambled to get away, the dog bit her arm and leg as she tried to exit the gate.

As the Sergeant applied a tourniquet to Deputy Pilloud's arm, Denney came out of the house, tried calling her dog off, and asked the officers, "[d]id she bite you?" RP at 124.

Deputy Pilloud was taken to the hospital, where she was treated with five sutures for lacerations near her elbow. She had bite marks on her arm, punctures and abrasions on her leg, and some scratches and bruising on her face.

Later that day, the Undersheriff went to Denney's house to investigate the attack and whether the dog was vaccinated for rabies. The Undersheriff's body camera

recorded his interview with Denney. During the interview the following exchange

occurred:

UNDERSHERIFF CHAPMAN: And so where have you been getting her vaccinations at?

MS. DENNEY: So we went to [a veterinarian] and they couldn't do anything because she—they muzzled her and they still couldn't get near her.

UNDERSHERIFF CHAPMAN: What do you mean? Why—was she—[INAUDIBLE] wouldn't let them give her a shot?

MS. DENNEY: They couldn't even get near her.

UNDERSHERIFF CHAPMAN: Okay. Is that something—is she—

MS. DENNEY: She's terrified of people.

UNDERSHERIFF CHAPMAN: She's terrified of people, okay.

MS. DENNEY: She's been in this yard and never gone anywhere but the vet's and that's it.

UNDERSHERIFF CHAPMAN: Okay. So, like, how does she—

MS. DENNEY: We've never walked her, nothing.

UNDERSHERIFF CHAPMAN: Okay. How does she present to the vets? I mean—oh, you muzzled her so she must try to bite people.

MS. DENNEY: She—if she leaves this yard, she is terrified.

UNDERSHERIFF CHAPMAN: Okay. Got it.

MS. DENNEY: Yeah, she does not like leaving her yard.

UNDERSHERIFF CHAPMAN: Okay. Has she ever bit anybody else that you know of or been, like, scare people or been aggressive toward them or anything?

MS. DENNEY: No.

UNDERSHERIFF CHAPMAN: No. Like none of your neighbors—

MS. DENNEY: They—so they do—

UNDERSHERIFF CHAPMAN: —if I talk to them?

MS. DENNEY: —like if they're outside of the fence, yes, they are terrified of her. But usually once I get people in, she does just fine.

UNDERSHERIFF CHAPMAN: What do you mean once you get people in?

MS. DENNEY: Like she has to—I have to show her that people are okay.

UNDERSHERIFF CHAPMAN: Okay. And so how do you keep her away from people until you shown they're okay?

MS. DENNEY:  Most of the time people don't come in our yard.

UNDERSHERIFF CHAPMAN:  Oh, okay.  Don't you have friends come over or anything like that?

MS. DENNEY:  I do.  I have two sets of friends and once I get them into our yard, they're fine with her.  And she's a sweetie once you're in our yard and—

UNDERSHERIFF CHAPMAN:  Yeah, but how do you keep her away from the people until you figure out?

MS. DENNEY:  Most people just don't come in our yard.

UNDERSHERIFF CHAPMAN:  Yeah, but you said you do, sometimes.  So how does that work?  Like if I came in to come talk to you, where would the dog be to acclimate?

MS. DENNEY:  No normally what I do is I put her in the house. Once you're in the yard I'll let her out and meet you—let her meet you.  And normally she'll do just fine.

UNDERSHERIFF CHAPMAN:  Normally.  What happens sometimes?

MS. DENNEY:  Never had a—otherwise.

UNDERSHERIFF CHAPMAN:  Okay.  And today—today was she just out running around in here?

MS. DENNEY:  Umm-hmm.

UNDERSHERIFF CHAPMAN:  Is that the idea?  Okay.

MS. DENNEY:  I don't know even why they were here to begin with.

UNDERSHERIFF CHAPMAN:  Okay.

MS. DENNEY:  I didn't know anything happened until I came out and it already happened.

UNDERSHERIFF CHAPMAN:  Okay.  Got it.  So [the veterinarian], who—where's [the veterinarian] out of?

MS. DENNEY:  Palouse.

UNDERSHERIFF CHAPMAN:  Palouse.  Did you use to live in Palouse?

MS. DENNEY:  Nope.  They were the only ones I found that would take aggressive dogs.  She went in because she—her ears were swollen and red—

UNDERSHERIFF CHAPMAN:  Right.

MS. DENNEY:  —and she had this big rash on her stomach.  And so they—the closest they could get is, like, from me to the fence and they just kind of glanced at her and said it was a food allergy and that was it.

RP at 148-51.

4

The State charged Denney with one count of owning a dog that attacks, a class C felony. The case proceeded to a jury trial.

The jury was instructed that to convict, the State had to prove beyond a reasonable doubt that (1) Denney "owned a dog that aggressively attacked and caused severe injury to [the deputy];" (2) "at the time of the attack, [Denney] knew or should have known that the dog was potentially dangerous;" and (3) that the act "occurred in the state of Washington." Clerk's Papers (CP) at 16.

Consistent with RCW 16.08.070(1), the jury was instructed that "potentially dangerous dog" means

> any dog that when unprovoked: (a) Inflicts bites on a human or a domestic animal either on public or private property, or (b) chases or approaches a person upon the streets, sidewalks, or any public grounds in a menacing fashion or apparent attitude of attack, or any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to cause injury or otherwise to threaten the safety of humans or domestic animals.

*Compare* CP at 18 *with* RCW 16.08.070(1).

The jury found Denney guilty and the court sentenced her to serve 30 days in jail.

Denney timely appeals.

## ANALYSIS

1. SUFFICIENCY OF EVIDENCE

Denney contends that there was insufficient evidence that she knew or should have known that her dog was a "potentially dangerous dog." We disagree.

"The sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "Our review . . . is highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Due process mandates that the State must prove every element of a crime beyond a reasonable doubt to secure a conviction. *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. When reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Additionally, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. If evidence is insufficient to prove an element of the crime, the remedy is reversal of the conviction and dismissal of the charge with prejudice. *State v. Smith*, 155 Wn.2d 496, 505-06, 120 P.3d 559 (2005).

The jury found Denney guilty of owning a dog that attacks. "The owner of any dog that aggressively attacks and causes severe injury or death of any human, whether or not the dog has previously been declared potentially dangerous or dangerous, shall, upon conviction, be guilty of a class C felony." RCW 16.08.100(3); *see also State v. Bash*, 130

Wn.2d 594, 611, 925 P.2d 978 (1996). "[T]he State has the burden of proving that the

owner of the dog either knew or should have known that the dog was potentially

dangerous." RCW 16.08.100(3).

> (1) [A] "potentially dangerous dog" means any dog that when unprovoked:
> (a) Inflicts bites on a human or a domestic animal either on public or
> private property, or (b) chases or approaches a person upon the streets,
> sidewalks, or any public grounds in a menacing fashion or apparent attitude
> of attack, or *any dog with a known propensity, tendency, or disposition to
> attack unprovoked, to cause injury, or to cause injury or otherwise to
> threaten the safety of humans or domestic animals*.

RCW 16.08.070(1) (emphasis added).[1]

Viewing the evidence in the light most favorable to the State, we conclude that a

rational jury could have found Denney guilty of owning a dog that attacks beyond a

reasonable doubt. Denney admitted that her neighbors were terrified of the dog and most

people who knew of the dog would not enter the yard. She also took precautions to keep

the dog away from people until the dog could accept a person. Denney admitted that she

had to find a vet who would treat aggressive dogs, and even when the dog was muzzled

the veterinarian would not get close to it. From this evidence, a jury could reasonably

infer that Denney either knew or should have known that her dog had "a known

---

[1] The parties agree that the State had to prove that Denney "knew or should have known" that her dog was potentially dangerous as defined by the emphasized portion of the definition above because the other portions of the definition did not apply in Denney's case. Br. of Appellant at 16; Br. of Resp't at 13.

propensity, tendency, or disposition to attack unprovoked . . . [or] to threaten the safety of humans." RCW 16.08.070(1)(b).

Denney argues that the statements she made to the Undersheriff about her dog being terrified of people and taking her dog to a veterinarian that treats aggressive animals was insufficient to show that she knew or should have known that her dog had a "known propensity" to "attack unprovoked." Br. of Appellant at 17-18. The fact that the dog was reacting to its fear of people does not change the fact that Denney knew the dog reacted by aggressively attacking anyone with whom the dog was not familiar.

2. CONSTITUTIONAL CHALLENGE TO DANGEROUS DOG STATUTES

Denney contends that RCW 16.08.100(3) and RCW 16.08.070(1) are unconstitutionally vague, both facially and as applied to the facts of her case. Specifically, she contends the statutes criminalize regular dog behavior based on a subjective determination about the presence or lack of provocation. We decline to review her facial vagueness challenge and conclude that the statutes are not unconstitutionally vague as applied to the facts of her case.

*A. Standard of Review*

We review the constitutionality of a statute de novo. *State v. Watkins*, 191 Wn.2d 530, 535, 423 P.3d 830 (2018). We begin by presuming that a statute is constitutional. *In re Det. of Danforth*, 173 Wn.2d 59, 70, 264 P.3d 783 (2011). Because of this presumption, the challenger bears the heavy burden of proving the statute's

8

unconstitutional vagueness beyond a reasonable doubt. *City of Spokane v. Douglass*, 115 Wn.2d 171, 177, 795 P.2d 693 (1990).

   B. *Unconstitutional Vagueness*[2]

   Washington courts have long recognized the fundamental principle that a criminal statute must give fair warning of the conduct that makes it a crime as required under the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.*; *see*, *e.g.*, *State v. Galbreath*, 69 Wn.2d 664, 667, 419 P.2d 800 (1966). As a result, a defendant may "challeng[e] a statute as being unconstitutionally vague." *State v. Thompson*, 28 Wn. App. 2d 1, 6, 536 P.3d 682 (2023).

   A statute "is unconstitutionally vague if a challenger demonstrates, beyond a reasonable doubt, either (1) that the ordinance does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) that the ordinance does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *Douglass*, 115 Wn.2d at 178.

---

   [2] As an initial matter, we note that Denney uses both vagueness and overbreadth terminology in her briefing on this issue. However, overbreadth and vagueness are distinct legal doctrines. *See City of Seattle v. Eze*, 111 Wn.2d 22, 26-33, 759 P.2d 366 (1988) (analyzing a defendant's vagueness and overbreadth challenges separately based on the doctrines' different rules and standards). Denney's briefing only addresses and applies the rules for vagueness challenges and this is the argument we address. To the extent that she is also arguing that the dangerous dog statutes are unconstitutionally overbroad, we decline to review those arguments, as they lack supporting authority or analysis under the overbreadth doctrine.

"A statute can be challenged as [either] facially vague or vague as applied."

*Thompson*, 28 Wn. App. 2d at 6. Denney challenges the dangerous dog statutes as both

facially vague and vague as applied. We address each of her challenges in turn.

### C. Denney's Facial Vagueness Challenge

It is well settled that vagueness challenges to statutes that do not involve First

Amendment rights are to be evaluated as applied under the particular facts of the case.

*See Douglass*, 115 Wn.2d at 182; *State v. Fraser*, 199 Wn.2d 465, 484-86, 509 P.3d 282

(2022).

Denney argues that she can mount a facial vagueness challenge to the dangerous

dog statutes on the grounds that they implicate First Amendment rights. She cites the

concurring opinion in *City of Sumner v. Walsh*, 148 Wn.2d 490, 503-04, 61 P.3d 1111

(2003) (Chambers, J., concurring), asserting that a facial vagueness challenge is

permissible if it impacts the fundamental right to move freely in public spaces.

Specifically, she contends that RCW 16.08.100(3) and RCW 16.08.070(1) are facially

vague because they "criminalize[ ] a person's freedom to be in public with their dog."

Br. of Appellant at 29.

As an initial matter, we are not bound by the concurring opinion in *Walsh* because

it was not a majority opinion. *See Norg v. City of Seattle*, 200 Wn.2d 749, 757, 522 P.3d

580 (2023) (explaining that a concurrence is only precedential when it receives five votes

from justices who also signed the majority opinion).

Additionally, Denney's reliance on *Walsh* is misguided. The concurring opinion

in *Walsh* acknowledged a fundamental right to "move freely in public places," rooted in

the "First Amendment's protection of association and expression," while analyzing an

equal protection challenge to a curfew ordinance. 148 Wn.2d at 504 (Chambers, J.,

concurring) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164, 92 S. Ct.

839, 31 L. Ed. 2d 110 (1972); *Waters v. Barry*, 711 F. Supp. 1125, 1134 (D.D.C. 1989)).

However, the portion of the *Walsh* concurrence cited by Denney concerns an equal

protection analysis, not a facial vagueness challenge. *Walsh*, 148 Wn.2d at 504-08

(Chambers, J., concurring). While the lead opinion in *Walsh* does analyze the

defendant's facial vagueness challenge to the curfew ordinance, Denney does not cite to

it or explain how the dangerous dog statutes are analogous to the curfew ordinance that

was struck down as unconstitutionally vague. *See Walsh*, 148 Wn.2d at 497-502.

Nevertheless, the dangerous dog statutes do not criminalize the right to move

freely in public spaces. Rather, they criminalize ownership of dangerous or potentially

dangerous dogs if the owner knows or should know of the dog's propensity, tendency, or

disposition to cause harm or threats. *See generally* RCW 16.08.100(3),.070(1). We are

unconvinced by Denney's argument that owning a dangerous dog is a First Amendment

protected right.

Alternatively, Denney contends that her facial vagueness challenge should be

considered even if the statutes do not involve First Amendment rights. Our Supreme

Court has consistently reiterated, by citing to United States Supreme Court case law, that vagueness challenges to statutes that do not involve First Amendment rights are to be evaluated as applied under the particular facts of the case. *See Douglass*, 115 Wn.2d at 182 (citing *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *United States v. Powell*, 423 U.S. 87, 92-93, 96 S. Ct. 316, 46 L. Ed. 2d 228 (1975); *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975); *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33, 36, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963)); *see also Fraser*, 199 Wn.2d at 484.

Denney's reliance on *State v. Hilt*, 99 Wn.2d 452, 662 P.2d 52 (1983) and *State v. Richmond*, 102 Wn.2d 242, 683 P.2d 1093 (1984), to support her argument that we can review a facial challenge to a statute that does not implicate First Amendment rights is unpersuasive. Br. of Appellant at 29-30. These cases, decided six and seven years before *Douglass*, did not analyze the relevance of the First Amendment, and *Douglass* later clarified that vagueness should be assessed as applied unless the statute implicates the First Amendment. *Douglass*, 115 Wn.2d at 182 (decided in 1990).

Denney also cites to several United States Supreme Court cases to support her assertion that we are permitted to review her facial vagueness challenge regardless of whether the challenged statute implicates First Amendment rights. Br. of Appellant at 30-31 (citing *Sessions v. Dimaya*, 584 U.S. 148, 173-74, 138 S. Ct. 1204, 200 L. Ed. 2d

12

549 (2018); *Johnson v. United States*, 576 U.S. 591, 595-96, 602, 135 S. Ct. 2551, 192 L.

Ed. 2d 569 (2015); *Kolender v. Lawson*, 461 U.S. 352, 358-61, 103 S. Ct. 1855, 75 L. Ed.

2d 903 (1983)).  However, she does not explain how Washington's dangerous dog

statutes are analogous to the statutes invalidated in those cases to justify review of her

facial vagueness challenge.

Moreover, we are bound to follow Washington Supreme Court precedent,

including on when to review a facial vagueness challenge.  *See 1000 Virginia Ltd. P'ship

v. Vertecs Corp.*, 158 Wn.2d 566, 590, 146 P.3d 423 (2006).  Although the United States

Supreme Court is the final authority on the federal constitution, only a clear directive

from the Court controls where the Washington Supreme Court has not addressed the

issue.  *State v. Calloway*, 31 Wn. App. 2d 405, 415-16, 550 P.3d 77 (2024).  Here, the

United States Supreme Court cases cited by Denney do not provide a clear directive that

would indicate the Court has abandoned the rule against facial vagueness challenges for

statutes that do not implicate First Amendment rights.  Further, the Washington Supreme

Court has consistently addressed this issue and continues to apply the rule against facial

vagueness challenges to statutes that do not involve First Amendment rights.  *See Fraser*,

199 Wn.2d at 484.  Thus, we should continue to adhere to the Washington Supreme

Court's approach to this issue.

Given this precedent, we decline review of Denney's facial vagueness challenge

and limit our review to her as-applied vagueness challenge.

### D. *Denney's As-Applied Challenge*

Denney argues that the dangerous dog statutes are vague as applied to the facts of her case. When reviewing an as-applied vagueness challenge, we look at the actual conduct of the party challenging the statute and not to a hypothetical situation. *State v. Watson*, 160 Wn.2d 1, 6-7, 154 P.3d 909 (2007). "'[W]hile a statute may be vague . . . as to some conduct, [it] may [also] be constitutionally applied to one whose conduct clearly falls within the constitutional core of the statute.'" *Thompson*, 28 Wn. App. 2d at 7 (internal quotation marks omitted) (quoting *State v. Maciolek*, 101 Wn.2d 259, 263, 676 P.3d 996 (1984)).

Denney's argument is related to the first prong of a vagueness challenge, which requires her to show beyond a reasonable doubt that the statute "does not define the crim[e] . . . with sufficient definiteness that ordinary people can understand what conduct is [prohibited]." *Douglass*, 115 Wn.2d at 178. Under this prong, a statute is unconstitutionally vague "'if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988) (quoting *O'Day v. King County*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988)). This test, however, does not demand impossible standards of specificity or absolute agreement." *Douglass*, 115 Wn.2d at 179. "If persons of ordinary intelligence can understand what the [statute prohibits],

notwithstanding some possible areas of disagreement, the [statute] is sufficiently definite." *See Id*.

As discussed above, only a portion of the definition of "potentially dangerous dog" supplied by RCW 16.08.070(1)(b) is relevant to Denney's case:

> [A] "[p]otentially dangerous dog" means . . . any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to cause injury or otherwise to threaten the safety of humans or domestic animals.

Denney contends that she could only guess at the meaning and application of the emphasized portion of the statute above. She argues that all she knew was that her dog was terrified of people and aggressive with the veterinarian. Br. of Appellant at 32-33. This argument fails. Denney admitted to knowing that her dog acted aggressively toward the veterinarian and anyone who came up to the fence or her house. She therefore knew that her dog had some propensity, tendency, or disposition to threaten the safety of humans and would not have to guess at the meaning and application of the statute. Her conduct falls within the constitutional core of the statute. Moreover, a person of ordinary intelligence would know that the statute applies to their dog when their dog was so aggressive with the veterinarian that even after being muzzled, the veterinarian would not get close to the dog. The statute does not make an exception for dogs that are aggressive only toward veterinarians.

15

Denney argues that the term "attack" is not defined by the statute. She contends that she could reasonably have viewed her dog as fearful with a tendency to attack, but cause no harm. Br. of Appellant at 33. This argument also fails.

First, a "statute is not unconstitutionally vague merely because it fails to define some terms." *In re Pers. Restraint of Troupe*, 4 Wn. App. 2d 715, 723, 423 P.3d 878 (2018). Instead, "[w]hen a statute does not define terms alleged to be unconstitutionally vague, we 'may look to existing law, ordinary usage, and the general purpose of the statute to determine whether the statute meets constitutional requirements of clarity.'" *State v. Zigan*, 166 Wn.2d 596, 603, 270 P.3d 625 (2012) (internal quotation marks omitted) (quoting *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96 (1994)).

In this case, the general purpose of the dangerous dog statutes is to make it illegal for an owner to own a dog that "aggressively attacks and causes severe injury or death," when the owner knew or should have known that their dog was potentially dangerous and fails to take necessary precautions. RCW 16.08.100(3). When reading the word "attack" in RCW 16.08.070(1)(b) alongside the "aggressively attacks and causes severe injury or death" language in RCW 16.08.100(3), Denney's argument fails. The dangerous dog statutes are not vague as applied to Denney because a person of ordinary intelligence could understand that the statute objectively prohibits owning a dog that attacks in an aggressive manner and causes injury. Even if there was some area of disagreement as to whether a playful attack would constitute an attack under the statute, which we do not

16

purport to decide here, the statutes when read together are sufficiently definite as applied to Denney's case.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Melnick, J.P.T.[†]

---

[†] Rich Melnick, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of the court pursuant to RCW 2.06.150(1).